**Velma DODD, Administratrix of the Estate of Dwayne Dodd**

v.

**CITY OF NORWICH and Eric Larson.**

**No. H–82–590 Civil.**

United States District Court,
D. Connecticut.

Sept. 13, 1984.

John R. Williams, Williams & Wise, New Haven, Conn., for plaintiff.

Richard Newton Ziff, Norwich, Conn., Denise M. Phelan, Andrew J. O'Keefe, O'Keefe, Dunn & Jackson, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

BLUMENFELD, Senior District Judge.

This is an action pursuant to 42 U.S.C. § 1983 to recover money damages for the death of Dwayne Dodd. The plaintiff's decedent died of a gunshot wound suffered while he was being handcuffed by the defendant, Eric Larson, an auxiliary officer of the Norwich Police Department. The plaintiff has also sued the City of Norwich, claiming that Larson had been inadequately trained and that he was acting pursuant to an official policy or custom of the city. In addition, there are pendent state law claims sounding in negligence.

*Facts*

Dwayne Dodd and Jervis Bell were robbing a house in the City of Norwich, which, unbeknownst to them, was equipped with a silent burglar alarm. Two police officers were dispatched to the house: Eric Larson and Larry Rice. Larson took a position at the rear of the house and Rice at the front of the house. Rice observed, through the front door, two persons inside the house and informed Larson that there were two or more burglars. Shortly thereafter, Dodd stuck his head out an open window in the rear of the house. Larson, with his gun drawn, ordered Dodd to come out of the house. Dodd complied and fell through the window to the ground below among some shrubs.

While Dodd was lying on the ground, Rice returned to the rear of the house and saw Dodd. Then Rice went again to the front of the house and apprehended Bell who ran out the front door. While Rice was in the front, Larson decided to handcuff Dodd. To accomplish this task, Larson ordered Dodd to place both hands in front of his head and lie with his face on the ground. (Dodd had fallen with his left hand in front of his head and his right arm bent with his hand partly under his chest.) Dodd did not comply and remained in the position in which he had fallen.

Larson then approached the defendant and knelt in front of Dodd's head within one foot of him. With the gun held in his

right hand, Larson placed a cuff on Dodd's left wrist. Larson then pulled the left wrist to the small of Dodd's back. Larson released the left hand and the handcuffs and reached for Dodd's right hand. Dodd then jerked forward and reached, with his right hand, for Larson's gun. Larson instinctively reacted by pulling his hand (and the gun) away from Dodd. During this scuffle, the gun discharged and Dodd died within a few minutes.

*Discussion*

The plaintiff contends that Dodd was deprived of his life without due process of law. The plaintiff does not contend that Larson intentionally shot Dodd; rather, the plaintiff claims that Larson was negligent in his use of force. This case poses two questions: (1) is negligence (even gross negligence) by a police officer a basis for a claim that one has been deprived of liberty without due process of law, and (2) was Larson negligent.

### I. *Section 1983*

The plaintiff contends that gross negligence on the part of a police officer is sufficient to establish a violation of the plaintiff's decedent's constitutional rights; nor does the defendant dispute that this is the applicable standard of liability. I, however, am not persuaded that grossly negligent conduct violates any constitutional right.

■ It is well established that the intentional exercise of excessive force by a police officer is a violation of constitutional rights; however, there has been some dispute as to the precise right which is violated. The cases appear to have concluded that the right in issue is the right to due process of law prior to being deprived of a liberty or property interest. *See, e.g., Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

■ In this case, the plaintiff does not contend that the officer *intentionally* used

excessive force; rather, the plaintiff contends that the officer was negligent in his use of force. Larson's use of the threat of deadly force (which is the force he *intended* to use) was appropriate as there was probable cause to believe that Dodd had just committed a burglary.

The plaintiff cites *Languirand v. Hayden,* 717 F.2d 220 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984), for the proposition that gross negligence amounting to a conscious indifference is a violation of section 1983. *Languirand* might be distinguished because it dealt with the liability of a municipality for its police officers' violations of constitutional rights, rather than the conduct of the police officers which would violate constitutional rights.[1] In any event, I am persuaded by the rationale of *Gilmere v. City of Atlanta,* 737 F.2d 894 (11th Cir.1984), which held that gross negligence is not a violation of a constitutional right. In *Gilmere,* the court held that the intentional use of force by a police officer did not amount to a violation of the due process clause, if the state provided a post-deprivation cause of action for assault and battery. *Id.* at 905–10.

> If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice *rather than merely careless or unwise excess of zeal* so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.

*Roberts v. Marino,* 656 F.2d 1112, 1114 (5th Cir.1981) (quoting *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981)) (emphasis added).

■ The plaintiff in *Gilmere* contended that the rationale of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), was limited to negligent deprivations and did not include intentional deprivations. In this case, however, the plaintiff only contends that there was a negli-

---

**1.** The Fifth Circuit explicitly refrained from expressing an opinion as to the appropriate stan-

dard of liability for the police officers' conduct. *Id.* at 223 n. 4.

gent (or grossly negligent) deprivation by the officer. The circumstances in which this deprivation occurred made a pre-deprivation hearing impractical. *Cf., Parratt,* 451 U.S. at 540–41, 101 S.Ct. at 1915–16. The laws of the State of Connecticut provide the plaintiff with a cause of action sounding in negligence, but

> To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis,* 424 U.S. 693, 710 [96 S.Ct. 1155, 1165, 47 L.Ed.2d 405] (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society.

*Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917. Larson, then, did not violate Dodd's constitutional rights. The plaintiff's section 1983 claims against the City of Norwich must also fail because it would only be liable if Dodd's constitutional rights were violated by Larson *and* that violation was a result of an official policy or custom. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### II. *Pendent State Law Claims*

The plaintiff contends that Larson was negligent in his failure to conform his conduct to minimally acceptable standards of police conduct. These standards, as will be discussed further, are designed to ensure the safety of the officer and not of the person he is arresting. The plaintiff also contends that Larson placed himself in a position of jeopardy where he feared for his life. The plaintiff contends that this fear caused Larson to cock his gun while handcuffing Dodd.

Larson testified that it is contrary to the policies of the City of Norwich and accepted police practice to draw a gun while it is cocked. When cocked, the amount of pressure on the trigger required to discharge the gun is much less than when it is not cocked. Thus, a cocked gun is more likely to discharge accidentally. The plaintiff contends that the ammunition issued by the Norwich Police Department when Dodd was killed was defective and/or old; thus, it required more power to be exploded than ordinary ammunition. When Larson's weapon was tested by Trooper Robinson of the Forensic Examination Division of the State Police, the gun consistently failed to fire when it was not cocked. (This was using the ammunition which was in the gun; with ordinary ammunition, it fired when not cocked.) If a gun is fired when it is cocked, the hammer travels a greater distance and hence has more power than when it is fired without being cocked. The plaintiff concludes that the gun must have been cocked in order to have fired at the time of the shooting. Of course, the plaintiff's scenario also requires assuming that Larson knew the gun would not fire unless it was cocked. However, Trooper Robinson could not conclude whether the gun was cocked or not at the time of the shooting. Nor does the plaintiff's theory persuade me to disbelieve Larson's testimony that the gun was not cocked.

■ The plaintiff presented expert testimony to support her claim that Larson acted negligently. The plaintiff's expert, Louis J. Reiter, has impeccable credentials: he worked his way through the ranks of the Los Angeles Police Department to become the Deputy Chief. Reiter specified a number of defects in Larson's conduct which led him to the conclusion that Larson was negligent. Larson should not have handcuffed Dodd in the spot where he did: Larson exposed himself to the potential

danger that Dodd's fellow-burglar would appear at the window above his head, and Larson gave up the control that he had had from maintaining observation of the house and its surroundings. Larson should not have handcuffed Dodd until Dodd cooperated by placing both hands in front of him: Larson thus exposed himself to the danger that Dodd would be in a position to resist. And Larson should have put his gun away before handcuffing Dodd: Dodd might have succeeded in taking the gun away from Larson.

■ This litany of failures presented by the plaintiff, if they were negligent, were negligent with respect to Larson's safety and not Dodd's. It is an elementary principle of tort law that one must violate a duty of care to the plaintiff; it is not sufficient to show that the defendant breached a duty of care to himself or someone other than the plaintiff. W. Prosser, *Law of Torts* § 53 at 324–27 (4th ed. 1971). Thus, these failures do not constitute negligence which results in any liability to the plaintiff.

■ The plaintiff's expert identified only one failure of Larson which increased the risk of injury to Dodd: Larson had his finger on the trigger at the time the gun discharged. Reiter testified that this was negligent; the proper procedure is to place one's finger alongside the trigger until one intends to shoot. But Reiter also testified that it was a common practice in many police departments to place one's finger on the trigger whenever the gun is drawn. Furthermore, the Police Chief of Norwich and the officer who trained Larson testified that it was standard practice and that it was not negligent to place one's finger on the trigger. Although the practice preferred by the plaintiff's expert may be safer, I conclude that it was not negligent for the defendant to place his finger on the trigger while holding his gun.

The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. Judgment shall enter for the defendants.

SO ORDERED.