827 F.2d 1
 Velma DODD, Administratrix of the Estate of Dwayne Dodd,
Plaintiff-Appellant,
v.
CITY OF NORWICH and Eric Larson, Individually and in his
official capacity as a Norwich Police Officer,
Defendants-Appellees.
 No. 1006, Docket 84-7780.
 United States Court of Appeals,
Second Circuit.
 Argued March 18, 1985.
Decided April 2, 1987.
Reargued June 15, 1987.
Decided Aug. 31, 1987.
 
 John R. Williams, New Haven, Conn. (Williams and Wise, of counsel), for plaintiff-appellant.
 Andrew J. O'Keefe, Hartford, Conn. (Jackson, O'Keefe and Dunn, Denise Martino Phelan, of counsel), for defendants-appellees.
 Before MESKILL and PRATT, Circuit Judges, and EDMUND L. PALMIERI, District Judge of the Southern District of New York, sitting by designation.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Velma Dodd, individually and as administratrix of the estate of her son, Dwayne Dodd, appeals from the dismissal of her complaint after a bench trial. She seeks damages for the death of her son, who was shot to death in a struggle over the gun of defendant Eric Larson, a relief police officer working part time for defendant City of Norwich, while Larson was trying to handcuff Dodd.
 
 
 2
 Plaintiff's claims against officer Larson and the city asserted both civil rights violations pursuant to 42 U.S.C. Sec. 1983 and negligence under Connecticut's wrongful death statute, Conn.Gen.Stat. Sec. 52-555. On the Sec. 1983 claim the district court found that officer Larson did not violate Dodd's constitutional rights and was therefore not liable. In addition, the court concluded, erroneously as we point out below, that absent a constitutional violation by Larson there could be no Sec. 1983 claim against the city. On the pendent state law wrongful death claim the court found that officer Larson was not negligent. Accordingly, the district court directed entry of judgment in favor of the defendants. 603 F.Supp. 514.
 
 
 3
 For the reasons set forth below, as to officer Larson, we affirm the dismissal of the wrongful death claim on the basis that he was not negligent, but reverse the judgment on Dodd's constitutional claims and remand for reconsideration under the fourth amendment. As to the City of Norwich, we reverse both the constitutional claims and the wrongful death action and remand for reconsideration of whether the adoption of the municipal policy followed by Larson violated the fourth amendment and/or was negligent under state law.
 
 BACKGROUND
 
 4
 The facts surrounding the tragic death of this sixteen year old boy are graphically set forth in the district court's opinion:
 
 
 5
 Dwayne Dodd and Jervis Bell were [burglarizing] a house in the City of Norwich, which, unbeknownst to them, was equipped with a silent burglar alarm. Two police officers were dispatched to the house: Eric Larson and Larry Rice. Larson took a position at the rear of the house and Rice at the front of the house. Rice observed, through the front door, two persons inside the house and informed Larson that there were two or more burglars. Shortly thereafter, Dodd stuck his head out an open window in the rear of the house. Larson, with his gun drawn, ordered Dodd to come out of the house. Dodd complied and fell through the window to the ground below among some shrubs.
 
 
 6
 While Dodd was lying on the ground, Rice returned to the rear of the house and saw Dodd. Then Rice went again to the front of the house and apprehended Bell who ran out the front door. While Rice was in the front, Larson decided to handcuff Dodd. To accomplish this task, Larson ordered Dodd to place both hands in front of his head and lie with his face on the ground. (Dodd had fallen with his left hand in front of his head and his right arm bent with his hand partly under his chest.) Dodd did not comply and remained in the position in which he had fallen. Larson then approached the [decedent] and knelt in front of Dodd's head within one foot of him. With the gun held in his right hand, Larson placed a cuff on Dodd's left wrist. Larson then pulled the left wrist to the small of Dodd's back. Larson released the left hand and the handcuffs and reached for Dodd's right hand. Dodd then jerked forward and reached, with his right hand, for Larson's gun. Larson instinctively reacted by pulling his hand (and the gun) away from Dodd. During this scuffle, the gun discharged and Dodd died within a few minutes.
 
 DISCUSSION
 
 7
 A. Claims Against Officer Larson.
 
 
 8
 1. Constitutional Claims.
 
 
 9
 Since decision of this case by the district court, the Supreme Court has provided us with additional enlightenment as to the rules applicable to constitutional claims such as plaintiff asserts here. In Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), the Court overruled Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), "to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty or property under the Fourteenth Amendment." Daniels, 106 S.Ct. at 665. The due process clause "is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property." Davidson, 106 S.Ct. at 670. According to the Court, "[h]istorically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty or property", Daniels, 106 S.Ct. at 665 (emphasis by the Court), and conduct that is merely negligent "does not implicate the Due Process Clause of the Fourteenth Amendment.' Id. at 666.
 
 
 10
 In short, after Daniels and Davidson, to establish a violation of the due process clause a plaintiff must prove that defendant "deprived" him of life, liberty or property, a concept clearly satisfied by intentional conduct, but clearly not satisfied by conduct that is merely negligent. The Court has expressly left open the question of whether something less than intentional conduct, such as defendant's "recklessness" or "gross negligence", may also be enough to trigger the protection of the due process clause.
 
 
 11
 In a separate ruling, and without discussing due process concepts at all, the Supreme Court in Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), turned to the fourth amendment and adopted a test of "reasonable seizure" to determine whether a police officer violates the constitution by shooting a fleeing burglar in the back. According to the Court, "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment", Garner, 105 S.Ct. at 1699, and "[t]o determine the constitutionality of a seizure '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' " Id. (quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)).
 
 
 12
 When it held that Dodd's claim of negligence by Larson did not give rise to a constitutional claim, the district court anticipated the Supreme Court's rulings in Daniels and Davidson, and insofar as the dismissal was based on a failure to make out a due process violation, the decision below must be regarded as correct. The district court did not, however, have the benefit of the Supreme Court's fourth amendment analysis as developed in Garner; therefore it did not consider whether, under the circumstances, Larson's "seizure" of Dodd was unreasonable. Accordingly, we remand the Sec. 1983 claim against officer Larson to the district court for further consideration under the fourth amendment, to determine in light of Garner whether Larson's "seizure" of Dodd was reasonable, and, if so, whether Larson himself is liable therefor under Sec. 1983. In considering Larson's possible personal liability under the fourth amendment, the district court should also consider whether he is entitled to a qualified good faith immunity based on his following the policy and training of the police department in keeping his gun unholstered while attempting to place handcuffs on Dodd.
 
 
 13
 Plaintiff also argued to the district court that officer Larson's conduct was not merely negligent, but was grossly negligent and therefore violated due process. This claim was rejected by the district court in two ways. Expressly, the district court held that not even a grossly negligent claim would constitute a constitutional violation. On this question, as we have indicated, the Supreme Court expressly reserved decision in Daniels, 106 S.Ct. at 667 n. 3. It is not necessary for us, either, to face this issue, because the district court found on the facts that Larson was not even negligent. Since, as we shall demonstrate in the discussion below of the wrongful death claim, this finding is not clearly erroneous, it forecloses, a fortiori, any possibility that Larson might have been reckless or grossly negligent.
 
 
 14
 2. Wrongful Death Claim.
 
 
 15
 Plaintiff's wrongful death claim against Larson rests on negligence. She claims Larson was negligent in attempting to handcuff Dodd before he was cooperating by placing both hands in front of him, in not putting his gun away before attempting to handcuff Dodd, in having his gun cocked, and in placing his finger on the trigger while holding the gun.
 
 
 16
 The district court rejected all these claims. Based on conflicting testimony as to proper police procedure, it concluded that Larson was not negligent in having his finger on the trigger of the gun. It further found that the gun was not cocked. On this record neither finding is clearly erroneous.
 
 
 17
 With respect to not holstering the gun before handcuffing Dodd, the uncontradicted testimony was that Larson behaved in exactly the manner in which he had been trained by the city's police department. As to handcuffing Dodd in that particular place near the house, and in doing so before Dodd himself extended both arms, the district court found that those considerations were designed to secure the safety of Larson, rather than Dodd, and therefore could not be a proper predicate for a negligence finding in favor of Dodd.
 
 
 18
 Under these circumstances, it is apparent that neither negligence nor, of course, recklessness or gross negligence is a factor in the case against Larson. Since the district court's findings with respect to the absence of negligence by Larson are not clearly erroneous, the pendent wrongful death claim against him was properly dismissed.
 
 
 19
 In sum, as to the claims against officer Larson, the district court properly dismissed the pendent wrongful death claim, and if due process were the only constitutional provision that could underlie plaintiff's Sec. 1983 claim, the district court would have been correct in dismissing that claim as well. However, it is necessary to remand the Sec. 1983 claim against Larson for further analysis by it in the first instance under the Supreme Court's holding in Garner to determine whether the shooting of Dodd was an unreasonable seizure within the meaning of the fourth amendment.
 
 
 20
 B. Claims Against the City of Norwich.
 
 
 21
 1. Constitutional Claim.
 
 
 22
 As to the Sec. 1983 claim against the city, the district court dismissed because of its erroneous view that the city would be liable only if Dodd's constitutional rights had been violated by Larson. There is no such requirement in the law. Under Monell v. Dep't of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), a municipality may be found directly liable under Sec. 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury * * * ". The city may be held liable under Sec. 1983 when "official policy [is] the moving force of the constitutional violation". Id.
 
 
 23
 Although a single brutal act by a low-level police official is insufficient to establish a policy that would render the city liable, Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985), it seems clear that a municipality may be held liable under Sec. 1983 if plaintiff establishes that it was the municipality that subjected him to the deprivation of his constitutional rights. A plaintiff may do this by proving both the existence of a municipal policy or custom and a causal connection between that policy or custom and the deprivation of his constitutional rights. Oklahoma City, 105 S.Ct. at 2436 (plurality opinion), id. at 2439 (Brennan, J., concurring). See also Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir.1985).
 
 
 24
 Plaintiff's theory of liability against the city focused upon the training given to officer Larson with respect to using his gun while handcuffing a suspect. The chief of police testified that Larson had been trained to keep his gun out, aimed at the suspect, while attempting to apply handcuffs, and that when officer Larson did so here he was acting in accordance with the policy of the city's police department.
 
 
 25
 Plaintiff's expert, Louis J. Reiter, a former deputy chief of the Los Angeles Police Department, who the district court found had "impeccable credentials", testified, however, that the policy of keeping a gun in hand while attempting to handcuff a suspect was contrary to the practice of most police departments, and was particularly dangerous because it puts the gun within reach of the suspect, and, in effect, invites a struggle with a possibility that the gun will go off. According to Reiter, the correct procedure is to put the revolver away and then go through the handcuffing process. Reiter further testified that the city's policy, conveyed to its police officers, including Larson, through its training program, constituted gross negligence amounting to conscious indifference to the life and safety of the people being arrested. In this instance, Reiter testified, the city's policy was the proximate cause of Dodd's death.
 
 
 26
 In light of this testimony, we think the district court erred in ending its analysis of plaintiff's Monell-type claim with its conclusion that officer Larson did not violate Dodd's constitutional rights. We have already held earlier in this opinion that that conclusion requires further analysis to determine whether Larson's "seizure" of Dodd was unreasonable. If the seizure was reasonable under Garner, then neither Larson nor the municipality could be liable for violating Dodd's fourth amendment rights. See City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). Even if the seizure was not reasonable, Larson still might not be liable because of his reliance on municipal policy in handcuffing Dodd as he did. See Sec. A(1) supra. As to the city, there would still remain the question of whether the municipal policy itself "caused" Dodd's death. As pointed out by plaintiff's expert, if the gun is left out of the holster during handcuffing, it increases the likelihood of a struggle and injury through accidental discharge of the gun.
 
 
 27
 While it is true, as the district court noted, that the city's policy is designed to protect Larson from injury, that cannot be its only purpose; the policy must also be designed to protect arrestees from unnecessary gunshot injuries or death. Such a policy with respect to the proper handling of a gun while handcuffing a suspect may be adopted only after balancing the various risks created by the policy against the benefits it achieves. See Garner, 105 S.Ct. at 1700-01.
 
 
 28
 The district court, however, gave no consideration to the existence of the policy, whether the policy caused Dodd's death, and if so, whether the city would thereby be rendered liable under Monell. Instead, the court simply dismissed the claim against the city on the ground that plaintiff had failed to establish liability against the individual police officer. Where, as here, a police officer carries out municipal policy with the result that an arrestee is killed, there is a potential for municipal liability even though the police officer may be personally immune from liability for having executed the arrest in the manner in which he had been trained under the city's policy. Cf. Los Angeles v. Heller, 106 S.Ct. at 1573 (verdicts establishing no unconstitutional arrest and no use of excessive force necessarily exonerated both police officer and municipality).
 
 
 29
 The city contends on appeal that the "cause" of Dodd's death was his own voluntary act in lunging for the exposed gun and was not any act or policy of the city. Monell's view of causation is, we think, more encompassing than such a narrow, immediate focus on the cause of the shooting. In adopting its policies a municipality must take into consideration the reasonably foreseeable conduct not only of its own employees but also of those citizens with whom its employees will interact. Basic principles of causation would render the policy a proximate cause of Dodd's death if Dodd's intervening actions were "within the scope of the original risk" and therefore foreseeable. W. Prosser, Handbook of the Law of Torts Sec. 44, at 273 (4th ed. 1971). If Reiter's testimony is to be credited, a matter for the district court to consider, then the district court might well find that the city's policy of training its officers to handcuff suspects with guns drawn "caused" Dodd's death by, in effect, inviting him to lunge for the gun. Since such a policy could serve as the basis for Sec. 1983 liability under Monell, we find it necessary to remand the Sec. 1983 claim against the city for further consideration.
 
 
 30
 2. Wrongful Death Claim.
 
 
 31
 To the extent that the wrongful death claim against the city was based on the doctrine of respondeat superior, it was derivative from, and therefore properly dismissed with, the negligence-based claim asserted against officer Larson. Plaintiff's wrongful death claim against the city, however, must also be viewed as charging negligence in the city's adoption of the gun-use policy.
 
 
 32
 Exonerating officer Larson from negligence does not necessarily exonerate the city from liability for adopting the gun policy on which officer Larson relied. Separate analysis under applicable principles of Connecticut negligence law must be applied to determine whether the city's policy and training with respect to the use of guns during handcuffing was negligent, and, if so, whether it was a proximate cause of Dodd's death, see Bonsignore v. City of New York, 683 F.2d 635, 637 (2d Cir.1982), and that analysis in the first instance should be done by the district court.
 
 CONCLUSION
 
 33
 As to defendant Larson the judgment is affirmed insofar as it dismissed the wrongful death claim against him, but with respect to the claim under Sec. 1983 the judgment is reversed and the case is remanded for further consideration. As to defendant City of Norwich, the judgment is reversed and the case is remanded for further consideration of both the wrongful death and Sec. 1983 claims.
 
 PALMIERI*, District Judge, dissenting:
 
 34
 I respectfully dissent.
 
 
 35
 Since I believe that, as a matter of law, no fourth amendment violation or municipal negligence was responsible for the course of events underlying this litigation, I cannot join that portion of the court's opinion which reverses and remands certain aspects of plaintiff's claim.
 
 
 36
 The recognition of a valid cause of action in Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), does not in my opinion justify the majority's view that it requires an inquiry by the district court as to whether the "seizure" of Dodd was reasonable. Garner bars the deliberate use of deadly force to seize an unarmed, fleeing, suspected felon. 471 U.S. 1, 11, 105 S.Ct. 1694, 1700, 85 L.Ed.2d 1 (1985). Here we are dealing with the inadvertent shooting of an already apprehended burglar during a struggle initiated by him in an attempt to disarm the arresting officer and after he had apparently surrendered. Nothing in Garner contemplates unintentional conduct, and the court below made an explicit finding that the police officer was not even negligent. I would therefore hold as a matter of law that the circumstances surrounding the arrest of Dodd, for which Larson had probable cause, did not constitute an unreasonable seizure under the fourth amendment. A remand of the Sec. 1983 claim as to Larson would consequently be inappropriate.
 
 
 37
 If Dodd's fourth amendment rights were not violated, the city cannot be held liable for a constitutional violation under 42 U.S.C. Sec. 1983. As the Supreme Court recently stated, if the agent "inflicted no constitutional injury on [the victim], it is inconceivable that [the principal] could be liable" to the victim under Sec. 1983. City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986).
 
 
 38
 Additionally, I cannot agree with the majority's suggestion that the city might be negligent under the Connecticut wrongful death law. Judge Blumenfeld's careful evaluation of the facts makes it quite clear to me that he would not find the city negligent. On the basis of his factual conclusions, which I consider to be unassailable, it would take a quantum leap of the imagination to find a causal link between Larson's police training under the auspices of the City of Norwich and the fatal accident which occurred during the nighttime arrest of a burglar caught in flagrante delicto.
 
 
 39
 I join the majority opinion only insofar as it affirms the dismissal of the wrongful death claim under state law as to Larson. I would affirm the judgment of the district court.
 
 ON REARGUMENT
 PALMIERI, District Judge:
 
 40
 Having heard reargument, we now conclude that the part of our earlier decision, Dodd v. City of Norwich, supra, p. 1 providing for a remand to the district court should be vacated and that the judgment of the district court should be affirmed in its entirety. We hold that, as a matter of law, no fourth amendment violation or municipal negligence was responsible for the course of events underlying this litigation. The discussion that follows assumes familiarity with our prior opinion.
 
 
 41
 In our earlier decision we remanded the case to the district court to consider whether Larson's shooting of Dodd was an unreasonable seizure under the fourth amendment in accordance with Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The recognition of a valid cause of action in Garner, however, does not justify an inquiry by the district court as to whether the "seizure" of Dodd was reasonable. Garner bars the deliberate use of deadly force to seize an unarmed, fleeing, suspected felon. 471 U.S. at 11, 105 S.Ct. at 1701. Here we are dealing with the inadvertent shooting of an already apprehended burglar during a struggle initiated by him in an attempt to disarm the arresting officer and after he had apparently surrendered. Larson's shooting of Dodd was not for the purpose of seizing him. The shooting was a pure accident. For all intents and purposes, the seizure of Dodd had already taken place by the time Larson placed a cuff on one of Dodd's wrists. Larson did not act unreasonably in seizing Dodd in this fashion.
 
 
 42
 It makes little sense to apply a standard of reasonableness to an accident. If such a standard were applied, it could result in a fourth amendment violation based on simple negligence. The fourth amendment, however, only protects individuals against "unreasonable" seizures, not seizures conducted in a "negligent" manner. The Supreme Court has not yet extended liability under the fourth amendment to include negligence claims. Only cases involving intentional conduct have been considered by the Supreme Court. Negligence, in fact, has been explicitly rejected as a basis for liability under the fourteenth amendment. See Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Larson, therefore, did not deprive Dodd of any constitutional rights in effectuating the arrest.
 
 
 43
 The original panel decision also held that the city can be held liable under Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), if police department training policy caused Dodd's death, even if Larson was not negligent. We, therefore, remanded the section 1983 claim against the city for further consideration under Monell. This holding, however, is incompatible with the Supreme Court's decision in City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). In that case, the Court stated: "if a defendant has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." Id. 106 S.Ct. at 1573. Thus, since Larson did not violate Dodd's fourth amendment rights, the city cannot be held liable for a constitutional violation under 42 U.S.C. Sec. 1983. See also Swink v. City of Pagedale, 810 F.2d 791, 794-95 (8th Cir.1987) (following Heller ).
 
 
 44
 Our original panel decision upheld the district court's rejection of Dodd's wrongful death claim on the grounds that Larson was not negligent in apprehending Dodd, but went on to hold that a wrongful death action may be maintained against the city for negligent adoption of the gun use policy. The problem with that analysis is that Larson followed the gun use policy to the letter. It has already been determined that Larson's actions were not negligent and were, in fact, reasonable. Judge Blumenfeld specifically stated that "it was not negligent for the defendant to place his finger on the trigger while holding his gun." The judge clearly did not believe Dodd's expert who testified that this policy of keeping a gun in hand while attempting to handcuff a suspect was dangerous and contrary to the practice of most police departments. Because the district court has held that the procedure followed by Larson was reasonable, it follows that the city cannot be held liable in negligence for adopting it. Accordingly, this portion of the prior panel decision is vacated.
 
 
 45
 The decision of the district court is therefore affirmed in its entirety.
 
 PRATT, Circuit Judge, dissenting:
 
 46
 The majority's disposition of this appeal establishes significant law for this circuit. Because of the brevity of the majority opinion, I think it is important for future cases to highlight its holdings, both explicit and implicit, even though I disagree with them. The majority holds:
 
 
 47
 (1) Once a police officer applies a single handcuff to an arrestee, the "seizure" is complete for fourth amendment purposes (indeed, "for all intents and purposes"), and there is no duty of reasonableness under Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), for anything that follows.
 
 
 48
 (2) Any municipal arrest policy, so long as it does not authorize the intentional use of unreasonable force, is immune from fourth amendment scrutiny, no matter how likely it might be to cause "inadvertent" injuries or deaths.
 
 
 49
 (3) The Supreme Court's holdings in Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), that a deprivation of due process cannot result solely from negligence, extend to deprivations of the fourth amendment right to be free of unreasonable seizures, and perhaps to deprivations of other substantive constitutional protections as well.
 
 
 50
 From each of these holdings, I dissent.
 
 
 51
 In our first decision on this appeal, Dodd v. City of Norwich, supra, we held that plaintiff Velma Dodd, individually and in her capacity as administratrix of decedent Dwayne Dodd's estate, (1) had a potential cause of action under the fourth amendment and 42 U.S.C. Sec. 1983 against the City of Norwich and police officer Eric Larson, based on the Supreme Court's decision in Garner, resolution of which required remand to the district court; (2) had a potentially valid wrongful death claim under Connecticut law against the city, but not against Larson, based on the city's policy of training police officers to hold their guns while attempting to handcuff arrestees; but (3) did not have a claim under the fourteenth amendment for denial of due process after the Supreme Court's decisions in Daniels and Davidson, which held that "mere negligence" does not constitute a deprivation of due process. In short, we concluded that the city's policy, as carried out by Larson, had to be considered for its reasonableness as a means of effecting seizures both in light of Garner and under Connecticut tort law.
 
 
 52
 On motion of appellees, we granted reargument to get the views of counsel on five recent Supreme Court cases cited in our prior decision: Garner, Daniels, Davidson, City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), and Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). After the reargument and after further deliberation, Judge Meskill became convinced that in his original vote he had erred. Displaying the candor and courage to which all of us aspire, he has changed his vote and now joins with Judge Palmieri in affirming.
 
 
 53
 I am not similarly persuaded, however, by Judge Palmieri's analysis, and my view is still that the proper disposition of this appeal is as stated in my earlier opinion. I see no reason why a municipal policy for effecting seizures cannot be "unreasonable" under Garner when the attendant risk of accidental harm is so grave as to outweigh the societal interests that are furthered by the policy.
 
 
 54
 The policy of the City of Norwich differs, according to the uncontradicted testimony of plaintiff's expert witness, from that of every other police department in the country. Whether Dodd's death was forseeable, given the unique gun-use policy adopted by the city, would seem to be a question of fact, not a question of law. If it was forseeable, then surely Dodd's "accidental" death was, in reality, an accident waiting to happen, and the city's policy might then be unreasonable, even if Larson himself, who was trained to follow that policy, was found to be not negligent in his own conduct. The city's no-holster policy should thus be separately assessed--by the district court in the first instance--under the Garner test.
 
 
 55
 The majority rejects this potential Monell claim, Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), by finding it to be incompatible with the Supreme Court's holding in Heller. However, to apply Heller, where the police officer did not follow the allegedly unconstitutional municipal policy, to this case where Larson "followed the city's gun use policy to the letter", establishes a "reverse respondeat superior" principle to the effect that the city cannot be held liable unless the officer is also held liable.
 
 
 56
 But this is not the teaching of Heller. There, while Heller had been injured during the course of his arrest, his injury and the other evidence did not establish excessive force and, therefore, did not cause him any constitutional deprivation. Thus, Heller determined merely that with respect to the particular violation at issue there, no constitutional violation had occurred at all.
 
 
 57
 By contrast, Dodd was deprived of his life, surely a constitutionally protected interest, and the question is whether the officer or the city can be held responsible for the loss. Finding no liability in Larson, the district court then moved automatically to a dismissal as against the city. In doing so it neglected to view the potential liability of the city as being based on different principles than the liability of its police officer. Rather than remanding for proper initial consideration of the city's liability by the trial court, the majority now prevents such an analysis by holding it to be unnecessary in light of the new principles established on appeal in this case.
 
 
 58
 In this difficult area of the law, I think we should be more cautious in applying blanket, even novel rules without having them first fully considered by the district court. Decisions on civil rights issues, particularly on those involving alleged police misconduct, are often troubling and difficult, as reflected in the conflicts in the circuits on many of the very issues in this case. See, e.g., Jamieson by and through Jamieson v. Shaw, 772 F.2d 1205, 1211 (5th Cir.1985) (use of "deadman roadblock" to effect seizure which caused accident seriously injuring passenger in automobile must be evaluated under Garner for reasonableness); Young v. City of Killeen, Tex., 775 F.2d 1349, 1353 (5th Cir.1985) ("The constitutional right to be free from unreasonable seizure has never been equated by the Court with the right to be free from a negligently executed stop or arrest."); Leber v. Smith, 773 F.2d 101, 105 (6th Cir.1985) (officer's drawing of weapon leading to unintentional firing when he slipped was subject to Garner analysis, but found reasonable under the circumstances); Galas v. McKee, 801 F.2d 200, 202 (6th Cir.1986) ("[T]he reasonableness of a seizure or method of seizure cannot be challenged under the Fourth Amendment unless there has been a completed seizure (that is, a restraint on the individual's freedom to leave)."); Robins v. Harum, 773 F.2d 1004, 1009-10 (9th Cir.1985) ("once a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers").
 
 
 59
 These and other cases reflect an understandable uncertainty that has marked the initial wave of lower-court reaction to Garner's adoption of a "reasonable seizure" test to govern methods of arrest. Moreover, our dealing with civil rights claims arising out of encounters between police and citizens is complicated by the many seeming contradictions, reversals of field, and enigmatic opinions presented to us by the Supreme Court.
 
 
 60
 Because of these difficulties in the law, because of the tragic harm inflicted on the Dodd family, and because the district court has never directly focused on the city's potential liability as being a direct result of its own gun-use policy as opposed to being merely a derivative consequence of Larson's conduct, I think a remand for such consideration would be the proper disposition of this appeal.
 
 
 
 *
 District Judge of the Southern District of New York, sitting by designation