Sam J. LORIA and Catherine
Loria, Plaintiffs,

v.

The TOWN OF IRONDEQUOIT, Irondequoit Police Department, Irondequoit Chief of Police, William Frey, John Doe and Jane Doe, and other Supervisors of Irondequoit Police Personnel, Officer Stephen Gerhardt and Officer Bernard Guinta, all of whom are sued in their individual and official capacities, Defendants.

Jeffrey LORIA and Suzann
Loria, Plaintiffs,

v.

The TOWN OF IRONDEQUOIT, Irondequoit Police Department, Irondequoit Chief of Police, William Frey, John Doe and Jane Doe, and other Supervisors of Irondequoit Police Personnel, Officer Stephen Gerhardt and Officer Bernard Guinta, all of whom are sued in their individual and official capacities, Defendants.

Nos. CIV–84–0513T, CIV–84—0512T.

United States District Court,
W.D. New York.

Oct. 19, 1990.

Ronald S. Carlisi, Rochester, N.Y., for plaintiffs.

Harris, Beach & Wilcox, James C. Gocker, Rochester, N.Y., for Town of Irondequoit, Irondequoit Police Dept. and William Frey.

Lawrence Andolina, Harris, Beach & Wilcox, Rochester, N.Y., for defendant Gerhardt.

Gough, Skipworth, Summers, Eves & Trevett, P.C., Thomas M. VanStrydonck, Rochester, N.Y., for defendant Guinta.

## DECISION AND ORDER

TELESCA, Chief Judge.

The plaintiffs, Sam Loria, his wife Catherine, his son Jeff and his daughter-in-law Suzann, filed these two actions pursuant to 42 U.S.C. §§ 1983, 1985 and 1988 as the result of certain events which occurred on February 8, 1983. In their complaints, the plaintiffs allege federal causes of action for deprivations of their Fourth and Fourteenth Amendment rights, as well as various pendent state law claims for assault, false arrest, malicious prosecution and abuse of process. Defendants Town of Irondequoit (the "Town"), Irondequoit Police Department ("Police Department"), Irondequoit Chief of Police William Frey, Officer Stephen Gerhardt, Officer Bernard Guinta, John Doe, Jane Doe and other Supervisors of Irondequoit Police Personnel now move for an order of summary judgment dismissing all or some of the claims against them. For the reasons discussed below, the defendants' motions are granted in part and denied in part.

## BACKGROUND

On December 31, 1982, Officer Bernard Guinta issued Jeffrey Loria a ticket for speeding. After issuing the ticket and returning to police barracks, defendant Guinta ran a routine check on Jeffrey's license and learned that it had been previously suspended for failure to pay a fine. Deposition of Bernard Guinta, October 15, 1986, at 27–30, 32. Guinta thereafter sought to ticket Jeffrey for driving with a suspended license and for failure to surrender a suspended item. When attempts to personally serve these upon Jeffrey at his home failed, Guinta decided to present the tickets at the time of Jeffrey's trial on the speeding violation.

That trial took place around 10:00 pm on February 8, 1983 in the Irondequoit Town Hall. Following the testimony of both Guinta and Jeffrey, Jeffrey was found guilty of speeding and fined $25. Immediately after the trial, Guinta took Jeffrey into a back room in the Court House to inform him of the additional charges against him. Guinta Dep. at 52; Deposition of J. Loria, at 20–21; Gerhardt Dep. at 158. The two were joined at some point by defendant Gerhardt, a police officer who had testified that night in another unrelated matter. Gerhardt was dressed in civilian clothes at the time and was carrying an off-duty .45 caliber revolver. Defendant Gerhardt's Statement of Material Facts Not in Dispute, ¶¶ 7, 16.

During the course of his discussions with Guinta and Gerhardt, Jeffrey disclaimed ever having received notice from the Department of Motor Vehicles that anything was wrong with his license. Despite these contentions, Guinta issued Jeffrey an appearance ticket for driving with a suspended license and Jeffrey thereafter left the room. The parties dispute whether Jeffrey was then told not to drive, although Jeffrey admits that he may have been so advised. J. Loria Dep. at 27, 30.

Jeffrey went to meet his mother, Catherine Loria, who was then waiting for him

outside the Town Hall. Upon informing her of the additional ticket, Jeffrey and his mother agreed that Jeffrey would take his car to his parents' home which was located about a mile away, and that someone would then drive him from there to his home in Greece.

Defendant Gerhardt followed Jeffrey from the building and, after observing him walk to his car, returned to the small room and advised Guinta that Jeffrey was about to drive. The two then entered Guinta's assigned vehicle, radioed for assistance, and began pursuing Jeffrey with flashing lights engaged. Jeffrey had stopped at an intersection, and as he approached, Guinta turned off the flashing lights. When the light turned green, Guinta pulled his vehicle directly behind Jeffrey's, reengaged the lights, ran the spotlight across Jeffrey's mirrors and hit the siren for one cycle. Despite these actions, Jeffrey claims that he did not hear the siren and that he was otherwise unaware of the police officers' presence at the light.

Guinta and Gerhardt, along with Catherine Loria, followed Jeffrey to his parents' home where they arrived shortly thereafter. While the exact nature and sequence of the subsequent events remains in dispute, a scuffle eventually ensued during the course of which Jeffrey alleges that Gerhardt struck him on several occasions while he and Guinta were trying to handcuff him. This scuffle was interrupted by Sam Loria who, apparently alerted by the flashing lights, appeared from the garage to determine the source of the commotion. Upon seeing his son wrestling with the two officers, Sam Loria grabbed Gerhardt about the shoulders and the two fell to the ground with the elder Loria ending up on top. Gerhardt withdrew his off-duty revolver and, with his finger on the trigger, pushed it against Sam Loria's side. Defendants Town, Police Department, *et. al.* Statement of Material Facts Not in Dispute, at ¶¶ 59, 60. The gun ultimately discharged, striking Sam Loria in the right groin.

Jeffrey, Catherine and Sam Loria were thereafter charged with various offenses, including resisting arrest and obstructing governmental administration. Catherine and Sam Loria were both "no-billed" by the grand jury and Jeffrey Loria was acquitted on all counts following a trial in Irondequoit Town court.

In their complaints, plaintiffs allege that Gerhardt and Guinta intentionally and negligently used deadly force in violation of their Fourth and Fourteenth Amendments rights, and that such conduct evidences a failure by the Town, its Police Department and its Chief of Police to properly train its officers. The defendants now raise a number of arguments in their summary judgment papers, all of which are treated below.

## DISCUSSION

1. *Motion to Dismiss Plaintiffs' Claims Involving Negligent Use of Excessive Force*

 The initial inquiry in a § 1983 action, including those involving excessive force, focuses on two issues: (1) whether the conduct complained of was committed by persons acting under color of state law; and (2) whether the conduct deprived a person of the rights secured by the Constitution or the laws of the States. *Graham v. O'Connor*, 109 S.Ct. 1865, 1870 (1989); *Parrat v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). While essentially conceding that they were acting "under color of state law," the defendants argue initially that plaintiffs' claims for "negligent" deprivation of their Fourth and Fourteenth Amendment rights fail to state a cause of action under § 1983 and should therefore be dismissed. I agree.

In its recent decisions in *Graham v. O'Connor*, 109 S.Ct. 1865 (1989) and *Brower v. County of Inyo*, 109 S.Ct. 1378, 1381 (1989), the Supreme Court established the parameters by which all § 1983 claims involving excessive force are to be measured. Rejecting the notion that there is a generic substantive due process "right" to be free from physically abusive governmental conduct, the Court held in *Graham* that any analysis of such claims must "begin[ ] by identifying the specific constitutional right

allegedly infringed by the challenged application of force." 109 S.Ct. at 1870. The Court noted that "in most instances, that will be either the Fourth Amendment ... or the Eighth," and stated that a claim's validity should accordingly be judged with respect to the constitutional standard underlying those provisions. *Id.* The Court concluded that *"all* [§ 1983] claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 1871 (emphasis in original). The inquiry for such claims should therefore focus on (1) whether the governmental conduct amounted to a "seizure," and, if so, (2) whether that seizure was "reasonable."

■ In *Graham* and in *Brower,* the Court made clear that a " 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or authority ... in some way restrained the liberty of a citizen.' " *Graham,* 109 S.Ct. at 1871 n. 10 (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16 (1968)); *see Brower,* 109 S.Ct. at 1381. Such a "detention or taking itself be willful" rather than merely "accidental," and the Fourth Amendment will therefore be implicated only when there is an "intentional acquisition of physical control." *Brower,* 109 S.Ct. at 1381. Accordingly, plaintiffs' excessive force claims which allege "negligent" deprivations of their constitutional rights, or which seek to invoke a Fourteenth Amendment substantive due process analysis must be dismissed. *See* Complaint of Jeffrey and Suzann Loria, at ¶¶ 34, 47; Complaint of Sam and Catherine Loria, at ¶¶ 34, 47; *see also* Plaintiffs' Memorandum in Response to Defendants' Motion for Summary Judgment, at 16–17.

2. *Defendant Gerhardt's Motion to Dismiss Sam Loria's Claim for Intentional Deprivation of his Fourth Amendment Rights*

■ Defendant Gerhardt argues that Sam Loria was not subject to a "seizure"

within the meaning of the Fourth Amendment at the time he was shot and that his Fourth Amendment excessive force claim should therefore be dismissed as well. More particularly, Gerhardt argues that he drew his weapon not to apprehend, restrain or otherwise "seize" Sam Loria but simply to defend himself. Considering the Supreme Court's language in *Brower, supra,* I find this view of what constitutes a Fourth Amendment "seizure" overly restrictive.

In *Brower,* the Court held that the police's use of a roadblock to stop a fleeing criminal amounted to a seizure under the Fourth Amendment. 109 S.Ct. at 1381. In so doing, the Court relied on its earlier decision in *Tennessee v. Garner,* 471 U.S. 1 (1985), in which it had unanimously held that a police officer's fatal shooting of a fleeing suspect similarly implicated the Fourth Amendment. Drawing upon these two cases, the *Brower* Court concluded that a seizure occurs whenever "there is a governmental termination of an individual's freedom of movement *through means intentionally applied." Id.*

■ Applying this standard to the facts in this case, there is at the very least a triable issue of fact as to whether the discharge of Gerhardt's weapon constituted a seizure for Fourth Amendment purposes. Taking the language in *Brower* at face value, a seizure occurs whenever there is a (1) governmental (2) termination of freedom of movement (3) through means intentionally applied. *Id.; Reed v. Hoy,* 909 F.2d 324, 329 (9th Cir.1990) (en banc). There is no dispute that the first two parts of this test are satisfied. Gerhardt does not claim that he was acting as anything other than a police officer during his struggle with Sam Loria, nor does he dispute that Sam Loria's freedom of movement was terminated as a result of the discharge of his weapon. As for third factor regarding his intent, that question is properly left for trial. Construing all evidence in light most favorable to the nonmovants, it is clear that a reasonable jury could find that Gerhardt intended to fire his weapon. I note only that Gerhardt's gun had to be cocked before firing and had a trigger pull

of 6 lbs, which is apparently substantial for this kind of weapon. Plaintiffs' Mem. in Response to Defendants' Motion for Summary Judgment, at 19.

■ The fact that Gerhardt may have discharged his weapon in self-defense does not alter this analysis. For Fourth Amendment purposes, Gerhardt's motive for drawing and firing the weapon (assuming that he did it intentionally) goes directly to the "reasonableness" of his actions and not to whether there was a "seizure" in the first instance. *Brower*, 109 S.Ct. at 1382 ("We think it enough that for a seizure that a person be stopped by the very instrumentality set in motion or put in place to accomplish that result."); *cf. Estate of Jackson v. City of Rochester*, 705 F.Supp. 779, 786 (W.D.N.Y.1989) (Larimer, J.) (officer's shooting of decedent in self-defense was not a seizure within the purview of the Fourth Amendment).[1] As the Ninth Circuit noted in *Reed v. Hoy, supra:*

> [W]hether the application of deadly force is for the purpose of effectuating an arrest or other stop, or for the purpose of self-defense, it is an acquisition of physical control by a law enforcement official that implicates the victim's [F]ourth [A]mendment interest to be free from unreasonable seizures. Thus, whether the use of deadly force in a particular case is constitutional depends on upon whether the use of such force was reasonable under the circumstances.

909 F.2d at 329 (citing *Graham*, 109 S.Ct. at 1871).

I am similarly unpersuaded by defendants' reliance on the Second Circuit's decision in *Dodd v. City of Norwich*, 827 F.2d 1 (2d Cir.1987), *cert. denied*, 484 U.S. 1007 (1988). In that case, the defendant police officer inadvertently shot a burglary suspect (Dodd) while that suspect was trying to take away his gun. The Second Circuit originally remanded the case to the district court to consider whether the officer's " 'seizure' of Dodd was reasonable." 827 F.2d at 4. The Court therefore assumed that the use of the weapon, even though in self-defense, amounted to a "seizure" for Fourth Amendment purposes. Following reargument, the court vacated that part of its order pertaining the reasonableness inquiry, finding that "[i]t makes little sense to apply a standard of *reasonableness* to an accident." 827 F.2d at 7 (emphasis added). The court reasoned that "[i]f such a standard were applied, it could result in a [F]ourth [A]mendment violation based on simple negligence. The [F]ourth [A]mendment, however, only protects individuals against 'unreasonable' seizures, not seizures conducted a 'negligent' manner." *Id.* at 7–8.[2]

There is no such concern here of a guilty verdict based solely upon mere negligence. Gerhardt will be found liable only if the jury finds that he drew his weapon intending to use it, or that he meant to fire it at the time of discharge. Under either scenario, it can be fairly said that he "set in motion or put in place" the very instrumentality which he intended to, and which did achieve the desired result. *See Graham*, 109 S.Ct. at 1382.

3. *Defendants' Motion to Dismiss Jeffrey Loria's Claim for Intentional Deprivation of Fourth Amendment Rights*

■ The defendants argue that Jeffrey Loria's Fourth Amendment excessive force

---

1. Judge Larimer's holding in *Jackson* rests on a factual scenario quite distinguishable from that present here. In *Jackson*, the defendant, Officer Gonzalez, stopped and questioned Jackson based on what he thought was suspicious behavior. It was only after he had begun questioning Jackson that Jackson approached him with a knife and Gonzalez fired upon him in self-defense. In holding that the Jackson's slaying did not implicate the Fourth Amendment, Judge Larimer relied not so much on notions of self-defense but on the fact that "[t]he shooting was unrelated to the stop":

 > Gonzalez did not shoot Jackson for the purpose of seizing him. The stop for purposes of investigating Jackson's behavior had been successfully *completed* in a reasonable manner. 705 F.Supp. at 787 (emphasis in original).

 In this case, there was no distinct moment where Gerhardt and Sam Loria separated such that it could be said that the "stop" or "seizure" had been completed.

2. Like Judge Larimer in *Jackson*, the Second Circuit found it significant that the seizure of Dodd had "[f]or all intents and purposes, ... already taken place" at the time of the shooting. 827 F.2d at 7.

claim should be dismissed because "it is clear that the officers used no more force to effect the arrest than what was reasonable under the circumstances." Despite defendants' contentions to the contrary, I find that material issues of fact exist with respect to this issue sufficient to defendants' motion for summary judgment.

Determining whether the force used to effect a seizure is "reasonable" under the Fourth Amendment "requires a careful balancing of the ' "nature and quality of the intrusion on the individual's Fourth Amendment interests" ' against the countervailing governmental interests at stake." *Graham*, 109 S.Ct. at 1871 (quoting *Garner*, 471 U.S. at 8) (citation omitted). The reasonableness standard employed in such cases is an objective one and, unlike the initial inquiry governing whether a seizure occurred, is made without reference to the officers' underlying intent or motivation. Its proper application requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 1871–72.

Gerhardt and Guinta contend that Jeffrey was attempting to flee at the time he was apprehended, that he thereafter resisted arrest and, in fact, struck Gerhardt in the face during their struggle. Gerhardt Tr. 214. Jeffrey alleges, on the other hand, that Gerhardt and Guinta repeatedly beat him, that he did not resist arrest but tried to avoid their assault, and that he himself did not throw any punches. Plaintiffs' Mem. In Response to Defendants' Motion for Summary Judgment, at 8. It is this material factual dispute which precludes a grant of summary judgment in favor of either party. Accordingly, defendants' summary judgment motion with respect to this issue is denied.

### 4. Defendants' Claim of Qualified Immunity

Defendants Gerhardt and Guinta argue that they enjoy qualified immunity with respect to Jeff Loria's excessive force claims insofar as their actions were objectively reasonable. To succeed on such a claim at this stage, the defendants must " 'adduce[ ] sufficient facts such that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[s]' " to believe that they were acting in a fashion that did not clearly violate an established federally protected right at the time of the incident. *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir.1987) (quoting *Halperin v. Kissinger*, 807 F.2d 180, 189 (D.C.Cir.1986)); *see Anderson v. Creighton*, 484 U.S. 635, 641 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 819–820 (1982). Inasmuch as material issues of fact exist with respect to the reasonableness of defendants' seizure, I can hardly conclude as a matter of law that defendants' conduct was reasonable or that a reasonable officer would have thought their actions lawful. *Cooper v. Merrill*, 736 F.Supp. 552, 561 (D.Del.1990) (disputed issues as the reasonableness of force used by police officer precluded summary judgment on qualified immunity defense). Accordingly, the defendants' motion for summary judgment on this issue is denied. *Mitchell v. Forsyth*, 474 U.S. 511, 526–27 (1985); *Via*, 821 F.2d at 921; *Green v. Carlson*, 826 F.2d 647, 652 (7th Cir.1987) ("If there are issues of disputed fact upon which the question immunity turns ... the case must proceed to trial.").

### 5. Defendant's Motion to Dismiss Plaintiffs' Conspiracy Claim

■ In their complaint, plaintiffs allege that Guinta and Gerhardt conspired to use excessive force and conspired to conceal their use of such force by charging Jeff, Sam and Catherine Loria with various state law crimes. Complaint of Sam and Catherine Loria, at ¶¶ 35, 36; Complaint of Jeff and Suzann Loria, at ¶¶ 35, 37. To succeed on this conspiracy claim under § 1983, the plaintiffs must prove both a conspiracy to deprive them of their constitutional rights and an actual deprivation. *Dean Tarry Corp. v. Friedlander*, 826 F.2d 210, 213 (2d Cir.1987); *Kaplan v. Clear Lake City Water Authority*, 794 F.2d 1059, 1065 (5th

Cir.1986). Insofar as there exist material issues of fact with respect to Sam and Jeff Loria's Fourth Amendment claims, defendants' motion to dismiss their conspiracy claim must be denied as well.

### 6. Motion to Dismiss Defendants' "John and Jane Doe and Others"

 In their complaints, plaintiffs designate certain unnamed defendants as "John Doe and Jane Doe, and others, Supervisors of Irondequoit Police Personnel." Despite apparently knowing their identities as far back as December of 1987, Joint Mem. of Law in Support of Defendants' Motions for Summary Judgment, at 32, plaintiffs have as yet failed to perfect service on any of these defendants. Accordingly, plaintiffs' complaint with respect to these defendants is dismissed without prejudice. Fed. R.Civ.P. 4(j).

### 7. Motion to Dismiss Defendant Police Department

 Defendant Police Department argues that it is not a proper party to this action. I agree. Pursuant to Fed.R.Civ.P. 17, New York law governs the capacity of the police department to sue or be sued. In New York, departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town. *Brockport v. County of Monroe Pure Waters Div.*, 75 A.D.2d 483, 486 (4th Dep't 1980), *aff'd*, 54 N.Y.2d 678 (1981); *Belinson v. Sewer District No. 16 of the Town of Amherst*, 65 A.D.2d 912 (4th Dep't 1978). Accordingly, the motion to dismiss defendant police department is granted.

### 8. Motion to Dismiss Plaintiffs' Claims for Punitive Damages

 It is by now well settled that a municipality cannot be held liable for punitive damages under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials); *Haile v. Village of Sag Harbor*, 639 F.Supp. 718, 723 (E.D.N.Y.1986). Accordingly, the Town of Irondequoit's motion to dismiss plaintiffs' punitive damage request is granted.

### 9. Motion to Dismiss Plaintiffs' State Law Claims

The plaintiffs' motion to dismiss state law claims is denied.

### SUMMARY

Plaintiffs' claims for deprivations of their Fourteenth Amendment rights and those for negligent deprivations of their Fourth Amendment rights are dismissed.

Plaintiffs' claims against John Doe, Jane Doe, and other supervisors of Irondequoit Police personnel are also dismissed as are their claims against the Irondequoit Police Department.

Finally, plaintiffs' claim for punitive damages is denied.

ALL OF THE ABOVE IS SO ORDERED.