**Lloyd MORRIS, Plaintiff,**

v.

**The CITY OF NEW YORK PARKING VIOLATIONS BUREAU, Defendant.**

**No. 80 Civ. 0012 (PNL).**

United States District Court,
S. D. New York.

Nov. 18, 1981.

---

James I. Meyerson, Thomas Hoffman, New York City, for plaintiff.

Carl Sanders and Judah Harris, Corp. Counsel, New York City, for defendant.

OPINION AND ORDER

LEVAL, District Judge.

Plaintiff brings this action under 42 U.S.C. § 1983, claiming to have been denied due process and equal protection of the laws by the seizure of his automobile after a default judgment for unpaid parking violations under § 241 of the New York Vehicle and Traffic law and the regulations promulgated thereunder.

Plaintiff claims to be a resident of North Carolina. Although plaintiff's residence is disputed, it is not disputed that his car was registered in North Carolina. North Carolina is one of ten states that do not provide New York with a computer tape identifying their automobile registrants. Plaintiff was issued and did not respond to several parking summonses in New York City. A default judgment was obtained against him. The judgment was executed upon by the Marshal, who seized plaintiff's car. The car was released to him when he paid the amount of the judgment, plus fees and impounding charges.

Plaintiff claims not to have received any of his many original summonses. Plaintiff claims also that the original summonses, even if received, would not provide sufficient notice, because, while they do say

> Failure to answer this summons within 7 days will be deemed an admission of liability. Additional penalties will be added and may lead to a default judgment

they do not mention that a default judgment could result in execution upon property.

Each party moves for summary judgment; plaintiff also moves for class certification.

Section 241 provides as follows: When the operator or owner of a car has failed to plead or appear in response to a parking violation, a default judgment may be entered. If the owner is a New York resident, he or she must be notified, by first-class mail, of the violations charged, of the impending default judgment, where the default would be entered, and that it could be

avoided by entering a plea or appearance within 30 days. In practice, the notice advises, although this is not required by the statute, that default could result in execution upon the property or income of the individual. Section 241 expressly provides that this notice need not be sent to non-residents of New York State.

The PVB practice is as follows: In all cases of parking violations, summonses are left on the vehicles. If they are not paid, and the car is registered in New York, the in-state owner receives a series of notices, as required by § 241, one of which includes the additional information that a default judgment could result in execution upon property. If the car has an out-of-state registration, the procedure depends upon the state of registration. The PVB has arranged with 39 states (the "cooperating states") to receive registration information on a computer tape compatible with New York's computer system; the PVB can therefore easily identify the names and addresses of the registered owners. The owners are then sent a series of notices substantially identical to those sent to New York residents. If the car is registered in one of the 10 states, including plaintiff's state of North Carolina, that do not provide such computerized information (the "non-cooperating states"), the PVB cannot obtain the names and addresses of owners without the considerable expense of writing for each unpaid ticket to the state of registration and entering the information by hand when it received a reply. Since the expense of following such a procedure far exceeds the revenues which would be produced by it,* New York does not undertake to learn the identity of the owner unless and until the car is seized for unpaid summonses. Accordingly no further notices are sent until such event.

Under the PVB's practices, cars are not seized for unpaid parking summonses unless there is a minimum of three tickets and $200.00 in unpaid fines outstanding. If a car from a non-cooperating state has been towed and is not claimed, the Marshal writes to the Motor Vehicle Department or equivalent agency of the state of registration, asking for the name and address of the registered owner and warning that the car will be sold. If this information is not received, the Marshal then sends a Mailgram to the state, asking again for the information and warning again of imminent sale. When the address is received, the Marshal sends a Mailgram to the owner, which states, "Please be advised that your [identified vehicle] has been impounded by New York Parking Violation Bureau and will be sold at public auction 10 days from today or thereafter. Telephone [Marshal's phone number and address]." Although the notice warns of sale within ten days, the general practice is to wait a longer time, usually about thirty days, for a response. An owner, having received such notice of the seizure, can redeem his car upon payment of the outstanding charges and the impounding fee. He can also obtain a hearing at the PVB challenging the validity of the seizure.

Plaintiff raises a number of challenges to these practices couched both in due process and equal protection terms. He contends, *inter alia*, that since the original summons left on a car does not warn that a default judgment could result in execution upon property, and since no additional notices are sent to residents of non-cooperating states until seizure has been effected, a resident of a non-cooperating state receives no specific notice that his property may be seized until after the fact.

■■■ I find that plaintiff's contentions, analyzed in accordance with the directions of *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), are without merit. In the first place, prior notice is given in the form of the parking ticket, of which at least three must be collected before seizure. A second notice is given which, although technically after sei-

---

* In the PVB's experience, less than 20% of out-of-state violators pay their fines even after receiving notice.

zure, is still in time to allow a hearing to determine the lawfulness and propriety of the seizure prior to sale. To require earlier notice to registrants from non-cooperating states would impose such costs on the system as would exceed the revenues obtained by enforcement. It would effectively oblige New York to give up attempts to enforce parking regulations against cars from non-cooperating states. Given the circumstances I am convinced that the notice given is reasonable and adequate.

I find that the PVB has a reasonable economic justification for the division of parking violators into what amounts to two classes. The first class consists of New York residents and residents of cooperating states, whose identity and address are available in computer format; these two groups are treated substantially identically. They receive a series of notices which can be sent out inexpensively and automatically by the computer, before a car is towed. The second class consists of residents of the ten non-cooperating states, as to whom the PVB would have to go to great and unjustifiable expense to identify.

I find that the PVB makes no impermissible differentiation between classes of people, in that any difference in treatment between residents and non-residents is rationally related to the obvious purpose of securing compliance with New York's parking laws. *See, e.g., San Antonio School District v. Rodriguez,* 411 U.S. 1, 55, 93 S.Ct. 1278, 1308, 36 L.Ed.2d 16 (1973); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). The elaborate series of notices sent to residents of cooperating states (substantially identical to the notices sent to residents) shows that New York's practices are not motivated by any animus toward non-residents. It is only where a state does not provide the necessary information in an economically usable form that New York fails to notify registered owners before execution, and even then adequate attempts are made to notify owners before a car is sold. Only if a non-cooperating state fails to reply to two separate requests for the owner's identification will a car be sold without the owner having been notified; this failure is more properly laid at the door of the non-cooperating state than of the New York PVB.

Nor is there a breach of due process in the failure of the parking ticket to warn of the possibility of execution after a default judgment has been taken. Execution is a legal consequence that can follow upon any judgment; a party who has been notified of the possibility of a default judgment being entered against him is sufficiently on notice of the ensuing legal consequences.

Furthermore, as noted above, the PVB does give notification of the execution, in the form of the Mailgram, while there is still time to forestall the final sale, which generally does not occur until approximately thirty days after the notice is sent. This notice does seem unnecessarily brief, and could certainly be more informative as to the procedures available to a car owner to avoid sale of the car, with little or no additional expense to the PVB. However, the Mailgram does convey, albeit laconically, that by calling the Marshal's phone number and arranging to pay the outstanding fines sale of the car could be avoided.

I therefore find that under the circumstances out-of-state residents are adequately and fairly notified of the pendency of action and there is no taking of their property without due process of law. *See Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

Defendant's motion for summary judgment is granted. Plaintiff's motions for summary judgment and class certification are denied.

The clerk is directed to enter judgment for the defendant.

SO ORDERED.