**Jeffrey M. BLUM, Plaintiff,**

**v.**

**Edward I. KOCH, in his official capacity Mayor of the City of New York; Robert J. Morgenthau, District Attorney for the Borough of Manhattan; Edward I. Pichler, in his official capacity as Special Assistant Corporation Counsel attorney for Judgment Creditor; The City of New York; The Parking Violations Bureau of the City of New York; Datacom Systems, Inc.; Scott Herschman, a.d.a.; John and Jane Doe, a.d.a., Defendants.**

**No. 85 Civ. 4385 (MGC).**

United States District Court,
S.D. New York.

June 26, 1989.

Jeffrey M. Blum, Buffalo, N.Y., pro se.

Peter Zimroth, Corp. Counsel of City of New York, by Barry I. Berger, Asst. Corp. Counsel, New York City, for defendants Koch, Pichler, Renna, The Parking Violations Bureau of City of New York and the City of New York.

Bressler, Amery & Rothenberg by David J. Olesker, New York City, for defendant Datacom Systems, Inc.

## OPINION AND ORDER

CEDARBAUM, District Judge.

This action was originally filed against Mayor Edward I. Koch, Sheriff Edward A. Pichler, Special Assistant Corporation Counsel Louis Renna, the New York City Parking Violations Bureau ("PVB"), and New York City (collectively, "City Defendants"), Datacom Systems, Inc. ("Datacom"), District Attorney Robert Morgenthau, Assistant District Attorney Scott Herschman, and two unidentified Assistant District Attorneys (collectively, "District Attorney Defendants"). Plaintiff Jeffrey Blum sues under 42 U.S.C. § 1983 on the claim that the seizure and sale of his car to satisfy a default judgment arising from unpaid New York City parking tickets violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution. Blum also claims that New York City is currently holding his car in violation of his substantive due process rights. In 1986, Judge Leisure dismissed the complaint as against the District Attorney Defendants. Blum has moved for partial summary judgment against the remaining defendants on the issue of their liability under 42 U.S.C. § 1983. For the reasons discussed below, Blum's motion is denied.

## BACKGROUND

The following facts are undisputed.

Blum is currently a Professor of Law at the State University of New York at Buffalo. In September of 1983, he was living in New York City and had begun employment as an associate at a private law firm. Blum had moved to New York City from Boston in the middle of 1980, after graduating from law school there. Prior to attending law school, he had lived in California, where his parents still reside. Blum

had not lived with his parents for several years before beginning law school.

In September of 1981, Blum received from his sister title to a 1973 Mazda automobile, California license plate # 921HFD, of which Blum's sister had previously been the title owner. At that time, and at all times relevant to this lawsuit, the car was registered in California at Blum's parents' address. Blum kept and used the car in New York, and regularly parked it near the apartment building in which he resided in New York City.

In 1983, the year in which the events giving rise to this dispute began, Datacom was under contract to the PVB to perform various functions relating to out-of-state "scofflaws." These functions included maintaining listings of out-of-state cars with unpaid parking tickets; seeking default judgments on those tickets in New York Civil Court; sending notices demanding payments from identified out-of-state car owners; maintaining records to indicate when enough tickets had accumulated with respect to a particular car to warrant execution of default judgments by seizing the car; sending inquiries to out-of-state Departments of Motor Vehicles ("DMVs") to determine the names and addresses of car owners whose cars actually had been seized pursuant to execution and whose identities had not already been learned; advising the Sheriff or the City Marshal of a car's eligibility for auction to satisfy default judgments; and advising the Sheriff or City Marshal whether a car had been reported stolen. Cars which were reported stolen to the Sheriff or City Marshal were removed from auction eligibility.

By 1983, Datacom had contracted with many "cooperating states," including California, to obtain computerized "tape-to-tape" motor vehicle registration information. Datacom could then use this information to send notices about unpaid tickets and the possibility of default judgments directly to out-of-state car owners. If the computer tapes did not contain this information and the car subsequently was seized, Datacom would send a mailgram or registered letter to the relevant DMV sev-enty-two hours after the seizure, requesting that it be sent the information within ten days. If the DMV responded promptly enough, Datacom would send notice of the seizure to the car owner, with instructions for redeeming the car. Otherwise, the car would be placed on the auction eligibility list.

On the evening of September 23, 1983, the New York City Sheriff's Office seized Blum's car pursuant to a default judgment that had been entered in New York Civil Court against "John Doe" as "owner of the motor vehicle bearing plate no. [CA] 921HFD," for five unpaid parking tickets totalling $240.00. Blum recalls receiving one parking ticket, although he does not recall whether he paid it. At least two of the five tickets were issued before the car was registered in California in Blum's name. The tickets all included warnings that a default judgment could result from the failure to acknowledge a citation, but Blum did not receive any additional notice of an impending default, or notice that his car had been seized by the Sheriff's Office.

On October 9, 1983, Blum discovered that his car was missing and reported it stolen to the New York City Police Department. Blum also contacted the PVB, but was told that the Bureau had no record that the car had been towed.

Datacom had not learned Blum's identity prior to the seizure, so on September 26, 1983, it sent a certified letter concerning Blum's car to the California DMV. Because Datacom had not received a reply by October 13, 1983, it advised the Sheriff on that date that the car was eligible for auction. It reconfirmed the auction eligibility on October 20. Datacom did not inform the Sheriff's office that the car had been reported stolen.

Following standard procedures, the Sheriff's Office placed an advertisement in the New York Times on October 20, 1983, for the auction that included Blum's car. The Sheriff's office also posted a notice in two or three public places in New York City, including the Sheriff's Office, the lobby of the Surrogate's Courthouse, and the New York County Clerk's office. The car was

sold to Manuel Valdes on October 21, 1983 for $275.

In February of 1984, Valdes was stopped for a traffic violation. A registration check revealed that the car had been reported stolen. By March of 1984, the circumstances which had led to Valdes' possession of the car had been sorted out. As a result, Blum paid two outstanding tickets reflected in PVB records. In October of 1984, he was informed of two other outstanding tickets, but he successfully challenged them as having been issued prior to his ownership of the car. Blum has been unable to retrieve his car from the custody of New York City, which seized the car from Valdes and which still retains possession of it.

## SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56; *see also Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988). The test for granting a summary judgment motion is similar to the standard for a directed verdict. If the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party, then there is a genuine factual dispute and summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The essential question on a motion for summary judgment, therefore, is whether there is a genuine dispute about a material fact. In this respect, "all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady*, 863 F.2d at 210.

## DISCUSSION

Blum's due process claims arise under 42 U.S.C. § 1983, which provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

To establish liability under § 1983, Blum must show both that defendants deprived him of his car without due process, and that they were acting "under color of state law," making the deprivation "fairly attributable" to the state. *See Walentas v. Lipper*, 862 F.2d 414, 418 (2d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989); *Dahlberg v. Becker*, 748 F.2d 85, 89 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

### A. The Procedural Due Process Claim

The essence of Blum's claim is that he was deprived of his property without due process because defendants were following a practice or policy of failing to provide adequate notice to out-of-state car owners whose identities were unknown before seizing and selling their cars to satisfy outstanding parking tickets. Drawing primarily from his own experience, Blum alleges that to provide notice of impending defaults and sales to unidentified out-of-state scofflaws, defendants in 1983 (1) relied on parking tickets to provide pre-seizure notice; (2) sent a single letter to the pertinent out-of-state Department of Motor Vehicles requesting owner identification information post-seizure; and (3) relied on pre-sale notice by publication. Blum also asserts, and defendants do not dispute, that defendants did not attempt to learn an owner's identity by searching unlocked glove compartments.

Under the classic rule, before it takes an action which will affect a protected property interest, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank &*

*Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Furthermore, "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party ... if its name and address are reasonably ascertainable." *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). Thus,

> [t]he proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice. As long as the state employs means "such as one desirous of actually informing the [property owner] might reasonably adopt to accomplish [that purpose,]" then it has discharged its burden.

*Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989) (quoting *Mullane,* 339 U.S. at 315, 70 S.Ct. at 657–58).

In determining what process is due, it is appropriate to consider:

> first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of any additional or substitute procedural safeguards; and finally, the Government's interest, including the functions involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *accord Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542–43, 105 S.Ct. 1487, 1493–94, 84 L.Ed.2d 494 (1985). This balancing test has been applied to the adequacy of notice. *See Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 14 & n. 15, 98 S.Ct. 1554, 1563 & n. 15, 56 L.Ed.2d 30 (1978); *see also Birdsell v. Board of Fire and Police Commissioners,* 854 F.2d 204, 207 (7th Cir.1988) (*Mathews* test applies to adequacy of notice as well as

to adequacy of hearings); *cf. Campo v. New York City Employees' Retirement System,* 843 F.2d 96, 100 n. 3 (2d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988) (noting expansion of *Mathews* test from pre- to post-deprivation hearings). Recently, in examining the constitutionality of a notice provision under Oklahoma probate law, the Supreme Court noted that *"Mullane* disavowed any right to require 'impracticable and extended searches in the name of due process.'" *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988). "The focus is on the reasonableness of the balance." *Id.* 108 S.Ct. at 1344.

Blum argues that defendants' procedures do not comport with *Mullane* and *Mennonite* because defendants easily could have discovered his identity by searching the unlocked glove compartment of his car, or alternatively, they could have sent a request to the New York State Commissioner of Insurance or to the California DMV "in a manner ... so that a response would have been likely," or retrieved the information from a computer tape previously provided to Datacom and the PVB by the California DMV. Blum's contentions will be examined first with respect to defendants New York City, Mayor Koch, and the PVB.

### 1. "Policy or Custom"—Liability of Municipal City Defendants

■ Since *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "a municipality can be found liable only where the municipality *itself* causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris,* — U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (emphasis in original); *see also Wilkinson v. Forst,* 832 F.2d 1330, 1342 (2d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1593, 99 L.Ed.2d 907 (1988). Under *Monell,* regardless of whether defendants Datacom, Renna, or Pichler violated Blum's constitutional rights, in order to recover against New York City, Mayor

Koch, and the PVB (sometimes referred to as "municipal City Defendants"), Blum must prove both the existence of a municipal policy or custom and that the policy or custom caused the deprivation of his constitutional rights. *Dodd v. City of Norwich*, 827 F.2d 1, 5 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 701, 98 L.Ed.2d 653 (1988); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 817, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983).

■ An "official policy or custom" means that "a deliberate choice to follow a course of action [was] made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). Since such a policy may be difficult to prove by direct evidence, it may be inferred from a municipal defendant's acts or failure to act. *See Sarus v. Rotundo*, 831 F.2d 397 (2d Cir. 1987); *Villante v. Department of Corrections*, 786 F.2d 516, 519 (2d Cir.1986); *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). But if the "policy" has not been expressly articulated or acknowledged, "considerably" more proof than a single alleged deprivation is necessary to establish both the municipality's liability and the required causal link. *Tuttle*, 471 U.S. at 824, 105 S.Ct. at 2436.

■ In addition to referring to his own experience as an illustration of defendants' alleged policy of providing constitutionally insufficient notice, Blum relies on Sheriff Department auction records, which reflect a large number of auctioned cars bearing out-of-state license plates as belonging to "Doe." Blum asserts that:

Comparing the period of 1981 and early 1982—on information and belief the period before Datacom took over responsibility for notifying vehicle owners—with subsequent periods of 1982, 1983 and 1985, I noticed a stark change in the apparent success rate of obtaining names and addresses. In the earlier period names were entered in 281 out of 338 cases, and only 57 had the designation "Doe." Thus approximately 83% were apparently receiving notification prior to vehicular sale. However, a subsequent sample covering the period of September 10, 1982 to January 21, 1983 showed that only 24 had names and addresses entered while 83 had the designation "Doe." Thus only 22% appear to have received notification at their addresses.

(Blum Aff. ¶ 21). Blum interprets these records to mean that defendants' procedures were "unreliable at best," and further contends that by virtue of these records, defendants knew their methods "were working in less than half of the cases where it was employed," yet chose to do nothing to improve the situation.

Blum has also submitted an affidavit by Kenneth Litwack, a former Director of the Bureau of City Marshals of the New York City Department of Investigations. Litwack asserts that "during the early months of 1981, I was becoming aware of numerous problems of ... inadequate notification procedures for owners of out-of-state vehicles." (Litwack Aff. ¶ 3). Litwack affirms that he memorialized these concerns in a memorandum dated April 17, 1981. In the memorandum, Litwack wrote that "out of state owners are rarely being notified that their car has been seized and are subject to sale," and that "the due process problems with these attempts to notify the owner are obvious and could subject the City to liability." (Litwack Aff. ¶ 5).

Next, Blum points to the fact that certain Datacom employees had no function other than to notify police precincts that cars had been towed in case their owners called to report them stolen.

Finally, Blum baldly asserts that defendant Renna, who signed judgment executions, and Allen Scott, a Vice–President of Datacom, had the authority to order the practice of seizing and selling cars without notice to cease, but did not do so.

Datacom disputes the importance of the auction records Blum has submitted. Datacom asserts that the records reflect only a small number of total cars seized, be-

cause only one sheriff was involved in the out-of-state scofflaw program, as compared to fourteen marshals. Thus, "even if *all* of the records of the Sheriff were reviewed, which they were not, there would be no showing of what the results of the overall operation of the program were." (Lipsitz Aff. ¶ 18) (emphasis in original).

Datacom does not offer any evidence to support the assertion that Blum's statistics are skewed. On the other hand, Allen Scott has testified in a deposition that Datacom was sending notices to out-of-state scofflaws by 1980 or 1981 (Blum Appendix p. A–39), and Datacom was at least attempting to identify these car owners from the time of its original contract in 1976. (Blum Appendix, p. A–85; Lipsitz Aff. ¶ 14). This evidence raises an issue of fact as to whether Datacom's added responsibility of sending notices as well as attempting to discover owners' identities in 1982 caused such a substantial difference in the identification success rate as to put the municipal City Defendants on notice that Datacom's procedures were insufficient.

Furthermore, a different inference from the one Blum offers may be drawn from the auction records. Namely, Blum cannot, and indeed does not, seriously contend that defendants could never tow or sell a car belonging to an out-of-state scofflaw until they had identified that person and provided notice by mail, and insured that the person had received the notice. As the court held in *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989), due process "does not mean that all risk of non-receipt must be eliminated." Thus, the mere fact that a car is sold as belonging to "Doe" becomes less significant. In addition, a trier of fact reasonably could infer that a proportionately greater number of "Doe's" on auction sheets actually reflected a higher success rate in identifying out-of-state owners who subsequently retrieved their cars before auction, especially in light of Datacom's assertion that out of "tens of thousands" of cars impounded from 1978 to 1985, only fifteen percent were auctioned. (Lipsitz Aff. ¶ 20).

Datacom also disputes the allegations made in the Litwack affidavit. Datacom asserts that Litwack never expressed any concern about the constitutionality of Datacom's notification procedures to anyone at the PVB or at Datacom, despite his April 17, 1981, memorandum. Datacom also points out that in a report prepared by Litwack on his perceived problems with Datacom and the PVB, dated November 22, 1982, he did not comment upon the constitutionality of Datacom's notification procedures, although he did question their efficiency. (Lipsitz Aff. Exh. F). Thus, whether and to what extent defendants may have been warned remains a question of fact.

Blum's argument is not persuasive that hiring personnel solely to provide a link between the towing program and the police constitutes some sort of admission that defendants did not provide sufficient pre-seizure notice.

Finally, the action or inaction of Renna or Scott would not subject the municipal City Defendants to liability unless Renna or Scott possessed "final authority to establish municipal policy with respect to the action ordered." *Pembaur,* 475 U.S. at 481, 106 S.Ct. at 1299; *see also St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (addressing circumstances under which single decision by policymaker unconstitutional municipal policy). Blum's assertions of their authority, without factual support, and their alleged failure to act, do not establish a wrongful municipal policy. *See Smith v. American Express Co.,* 853 F.2d 151, 155 (2d Cir.1988) (conclusory and unsupported allegations insufficient to satisfy Rule 56(e) requirements).

Because Blum's evidence is susceptible of conflicting interpretations, and because other allegations are unsupported, a genuine issue of material fact exists with respect to whether the municipal City Defendants were following a policy of providing insufficient notice when Blum's car was seized and sold. Blum therefore is not

entitled to summary judgment against them.

### 2. Constitutionality of Notification Procedures—Liability of Remaining Defendants

Whether the remaining defendants—Datacom, Renna, and Pichler—deprived Blum of his property without due process of law is another question which cannot be resolved on this motion. Blum relies on his own experience, including Datacom's failure to learn his identity pre-seizure and pre-sale, as representative of defendants' procedures. Defendants contend, first, that Blum cannot show that their conduct was the cause of his alleged injury. Defendants also respond to Blum's assertions by arguing that Blum's experience was an atypical one, and that the actual procedures were constitutional, and that in any event Blum received due process.

#### a. Causation

■ With respect to causation, defendants dispute the assertion that the failure to send Blum notice was the cause of his deprivation. They argue that Blum's car was seized and sold not because of their failure to send him actual notice, but because Blum himself failed to register his car in New York, although he was required to do so as a New York resident. City Defendants also assert that because of Datacom's intervening negligence, the Sheriff's Office was unaware that Blum's car had been reported stolen, in which case it would not have been sold.

It may be argued that the primary injury to Blum was the sale of the car without his knowledge. Focusing on this injury alone, City Defendants' assertion of Datacom's negligence leads to the question of whether it was reasonable for City Defendants to rely on Datacom as providing a "safety net" to prevent the sale of cars belonging to unidentified persons who had reported their cars stolen. Reasonable reliance is not only a factual issue in itself, but City Defendants' argument also goes to the second prong of the *Mathews* test—that is, the risk of an erroneous deprivation resulting from procedures used. Neither of these factual issues can be resolved on this motion.

With respect to Blum's failure to register the car in New York, defendants rely on the line of cases which require a causal link between a municipal policy and a constitutional violation in order to hold the municipality liable. *See, e.g., City of Canton, Ohio v. Harris,* —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Dodd v. City of Norwich,* 827 F.2d 1, 5 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 701, 98 L.Ed.2d 653 (1988); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983).

Blum's failure to register his car in New York does not relieve defendants of liability if their intentional conduct deprived him of due process of law. Defendants' reliance on the line of cases cited above is misplaced.

Furthermore, Blum does not argue that he should have received the same series of notices as those sent to a New York City resident, but that defendants' treatment of non-residents is constitutionally deficient. Blum's failure to register his car in New York did not forfeit his right to receive any notice. If Blum had received notice, he would have had an opportunity timely to contest the pending default judgment and subsequent execution of it, wherever he was registered. Blum's failure to register in New York is not an independent intervening cause that broke the chain of events that led to the seizure of his car. I turn then to the notification procedures used for out-of-state scofflaws.

#### b. Pre–Seizure Notice

■ It is undisputed that prior to 1983, Datacom had entered into a cooperation agreement with California to receive car registration information. Datacom asserts that it was requesting names and addresses from the California DMV on a monthly basis, with one or two follow-up requests as necessary. (Lipsitz Aff. p. 8). Datacom further asserts that neither the PVB nor Datacom had direct on-line access to out-of-

state DMV information, and, therefore, Datacom had to depend on those DMV's for receiving accurate and timely information, and errors were inevitable. (*Id.* at 9). With respect to Blum's car, Datacom does not know whether it actually consulted the computer tapes, whether the tapes contained accurate information, or whether it mailed notices that simply did not reach Blum. Such uncertainty, however, does not affect the resolution of this motion.

Relying on the computer tapes to obtain information pre-seizure strikes a reasonable balance that comports with due process. Defendants had no other feasible means by which to obtain ownership information at that time. To require defendants to take additional steps beyond consulting a computer tape to identify car owners pre-seizure, when the car and owner might no longer be in New York, would have been an expensive and time-consuming undertaking, perhaps with no offsetting benefits. In fact, Blum does not contend that the pre-seizure notification procedures that Datacom asserts it was following in 1983 are unconstitutional. He specifically mentions the computer tapes as a way in which defendants could have discovered his identity, but argues that defendants did not regularly consult the computer tapes.

Datacom has raised a genuine issue of material fact as to the pre-seizure procedure used for notifying out-of-state scofflaws. Under Datacom's version, a reasonable trier of fact could conclude that Blum's car was seized because an individual or individuals acted in a "random and unauthorized" manner—either negligently or intentionally—in failing to follow Datacom's procedures. If so, Blum would be unable to recover under § 1983. First, mere negligence by a state actor does not constitute a constitutional deprivation under the Fourteenth Amendment. *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Farid v. Smith* 850 F.2d 917, 925 (2d Cir.1988); *Dodd v. City of Norwich,* 827 F.2d 1, 5 (2d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 701, 98 L.Ed.2d 653 (1988). Second, the existence of an adequate postdeprivation remedy satisfies due process, *Parratt*

*v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), even if the unauthorized conduct was intentional. *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Marino v. Ameruso,* 837 F.2d 45, 47 (2d Cir.1988); *Costello v. Town of Fairfield,* 811 F.2d 782, 784 (2d Cir.1987).

Blum contends that the *Parratt* line of cases does not apply here because he has no adequate post-deprivation remedy. Blum asserts that defendants refuse to refund towing and storage charges to owners whose cars were seized without notice, and that once cars are sold, defendants consider the original owners' rights to have been extinguished. "Consequently," Blum concludes, "plaintiff succeeded in having two summonses against him dismissed, but he was not given back his car."

Due process does not require the state to restore the status quo, just to provide adequate compensation. Since a full panoply of state law claims are available to Blum for recovering against defendants, some of which he has already asserted in this action and which could have been raised in state court, due process is satisfied. *See also Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989) (opportunity to obtain redress in state court is due process); *Campo v. New York City Employees' Retirement System,* 843 F.2d 96 (2d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988) (state may satisfy post-deprivation due process requirements in either administrative or judicial setting). Blum cannot argue that his remedies are insufficient simply because he has refused to utilize them. *See Costello v. City of Fairfield,* 811 F.2d 782, 786 (2d Cir.1987) (Van Graafeiland, J., concurring).

Because Datacom has raised a genuine issue of material fact with respect to pre-seizure notice, it is unnecessary to examine defendants' alternative argument that Blum was not entitled to receive pre-seizure notice. I turn then to the issue of

whether Blum was entitled to be sent separate notice after the car was seized and before it was sold.

### c. Post–Seizure Notice

■ Datacom's written procedures prescribe that if an owner's name is not on file after a car is seized, Datacom is to send a written request for owner information to the out-of-state DMV. If no response is received within ten days, Datacom considers the car eligible for auction. Defendants have not offered any evidence to show that their actual practice differed from the written procedures prescribed.

Blum contends that the single request is unconstitutional because of the risk of an erroneous deprivation, as in his case, and because there are other means for identifying car owners post-seizure. Blum also asserts that a "pertinent official" of the California DMV told him that "the proper method of getting name and address information rapidly from California DMV was by teletype or telephone, and that it was unlikely that a single registered letter or mailgram would receive a prompt response." (Blum. Aff. ¶ 23). Because this last assertion is based on hearsay, it may not be considered on this motion. *See* Fed. R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence....").

As discussed above, a party whose identity is "reasonably ascertainable" must be provided with actual notice before being subject to an action that could result in the deprivation of property. But this requirement is tempered by a balancing of state and private interests, including the burden to the state of adopting more extensive identification and notification procedures. *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Blum insists that defendants should search unlocked glove compartments for identification, since such a search would have revealed his own identity. However, to require them to do so would be extremely burdensome. Not only would it impose additional administrative duties on the person towing the car, but also, and more importantly, it could lead to increased conflict between owners and defendants over whether the glove compartment was unlocked and whether identification should have been found elsewhere in the car. Blum's suggestion applies best to his own experience, but such an individualized approach is not the way to develop procedures which will comport with due process for everyone. Thus, defendants do not violate due process if they do not search glove compartments to ascertain a car owner's identity.

On the other hand, neither Datacom nor City Defendants offer any facts to show that they are entitled to rely on their post-seizure procedures as a reasonable way to obtain ownership information. Instead, Datacom contends that the procedures are constitutionally sound as a matter of law because parking tickets themselves provide actual notice of a possible default pre-seizure, because the request to the out-of-state DMV is sufficient substitute service, because the circumstances only require notice by publication, and because the procedures have already been judicially approved. City Defendants do not specifically address the post-seizure procedures at all, other than to say that they have been judicially approved.

Parking tickets must contain a warning "that failure to plead in the manner and time provided shall be deemed an admission of liability and that a default judgment may be entered thereon." N.Y. Veh. & Traf. L. § 238, subd. 1 (McKinney 1986). In addition, the logical consequence after a car is seized to satisfy a default judgment is that it eventually may be sold to recover the proceeds. *See also Morris v. City of New York Parking Violations Bureau*, 527 F.Supp. 724 (S.D.N.Y.1981). However, one factor to consider in determining whether a process is reasonable is the risk of an erroneous deprivation. A car will not be seized unless the owner has accumulated at least two hundred dollars' worth of

unpaid tickets. Blum's personal experience shows that if the number and amount of outstanding parking tickets reflected in city records are inaccurate, an erroneous seizure and sale may result. On the other hand, defendants do not rely on tickets alone, and it therefore is necessary to examine whether Datacom's post-seizure procedures as a whole are reasonable.

The request for information does not in itself constitute sufficient substitute notice. Datacom contends that it should because the out-of-state DMV is "in effect ... the agent for notification of the owner." But this case is distinguishable from *Cais v. Pichler*, 123 Misc.2d 275, 473 N.Y.S.2d 719 (Civ.Ct.N.Y.County 1984), relied on by defendants in support of this argument. In that case, the Sheriff's Office requested the Connecticut DMV to notify the plaintiff that his van had been seized in execution of a default judgment, of which the Parking Violations Bureau was judgment creditor. The plaintiff did not assert lack of notice of the underlying judgment, or unawareness that his van was subject to seizure, but contended that defendant had failed to notify him of the taking pursuant to CPLR 5232(b), which concerns service of copies of execution papers. The court, examining CPLR 5232 in the context of service outside New York City, held that service was "more than sufficient." 473 N.Y.S.2d at 721. But since it was reasonable for the plaintiff to expect that the Sheriff's Office would levy his van in New York, that case did not involve the same due process concerns that Blum has raised.

Nor does *Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), also relied on by Datacom and involving personal jurisdiction over out-of-state motorists, support defendants. In that case, a state official of Massachusetts was authorized by statute to receive service of process on behalf of out-of-state motorists. The statute also required plaintiffs to send notice of service, by registered mail, to out-of-state defendants.

New York's non-resident motorist statute, Veh. & Traf. L. § 253 (McKinney 1986), does not provide for substitute service on an out-of-state DMV, but limits it to the New York Secretary of State. Furthermore, § 253 requires a plaintiff to send notice and a copy of the summons of the complaint directly to the defendant. Although the request allegedly sent to the California DMV informed the DMV of the reason for the request, and also contained a "notice to judgment debtor," (Lipsitz Aff. Exh. H), it did not ask California to notify Blum of the default judgment. *Hess* thus bears no relation to this case.

In arguing that notice by publication sufficiently supplements the notice provided by parking tickets, Datacom relies on *SEC. v. Tome*, 833 F.2d 1086 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1751, 100 L.Ed.2d 213 (1988). In that case, the defendants were involved in the purchase of call options in violation of federal securities laws. The SEC served notice of the complaint on then-unknown European defendants by publication in The International Herald Tribune, pursuant to Fed.R.Civ.P. 4(i)(1)(E). The court held that this notice was sufficient, noting that the identities of certain defendants remained unknown "despite diligent efforts," 833 F.2d at 1091, and that publication was "reasonably calculated to notify the unidentified purchasers ... of the suit against them." *Id.* at 1093. The court also held that notice by publication satisfied due process because the defendants, as members of the securities industry, should have been aware of the publicly announced SEC investigation, and because publication in The International Herald Tribune was different from publication in a small regional paper or in an advertisement containing nothing to draw a party's attention to it. *Id.*

The facts of *Tome* are distinguishable from those of this case. Not only is the out-of-state scofflaw program not well-publicized, but Datacom has not offered any evidence to show that a single mailed request constitutes a sufficiently diligent effort to discover unknown owners' identities. *See also Gleason v. McBride*, 869 F.2d 688, 692 (2d Cir.1989) ("intent to file" letter and mention of lawsuit in newspaper article insufficient notice because names and addresses were available, and "the rea-

sons disappear[ed] for resort less likely than the mails to apprise [defendants] of its pendency") (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657).

Nor may defendants rely on *Cais v. Pichler*, 123 Misc.2d 275, 473 N.Y.S.2d 719 (Civ.Ct.N.Y.County 1984), and *Morris v. City of New York Parking Violations Bureau*, 527 F.Supp. 724 (S.D.N.Y.1981), as having already approved the post-seizure procedures. *Cais* has already been discussed. In *Morris*, the court addressed the constitutionality of the PVB's notification procedures for out-of-state scofflaws. The plaintiff owned a car registered in North Carolina, a non-cooperating state, and received no pre-seizure notice beyond the parking tickets themselves. Nor was he sent any post-seizure notice, because the North Carolina Department of Motor Vehicles had failed to respond to two requests for owner information before the car was eligible for auction. The court upheld the PVB's notification procedures on the grounds that the tickets provided actual notice of the consequences of failing to appear; that requiring additional pre-seizure notice would be extremely burdensome, since North Carolina was a non-cooperating state; and that post-seizure procedures were adequate to protect an owner's right to due process, since North Carolina's failure to respond was "more properly laid at the door of the non-cooperating state than of the New York Parking Violations Bureau." *Id.* at 727.

The court did not examine post-seizure procedures as applied to residents from cooperating states. Therefore, it cannot be cited for the proposition that it has approved them in this context. Furthermore, the court noted that even for residents of non-cooperating states, the PVB in 1981 was sending two requests for information to the out-of-state DMV before selling the car. Datacom has not offered any explanation as to why it was sending only one letter by 1983. But car owners' identities may have been more "reasonably ascertainable" through the additional prodding of a second request, for example. Such considerations raise factual issues which preclude summary judgment on the issue of whether

defendants' post-seizure procedures are constitutional.

## B. The Substantive Due Process Claim

■ Blum argues that City Defendants are violating his due process rights by continuing to hold his car throughout this action. On the District Attorney Defendants' motion to dismiss the complaint, Judge Leisure held that the District Attorney's Office properly withheld return of the car and turned it over to the New York Police Department after it learned of conflicting claims to the car's title. City Defendants affirm that nothing has changed since Judge Leisure issued his opinion.

Blum does not dispute that Mr. Valdes is a bona fide purchaser of his car. Thus, there apparently continue to be "serious reasons (presented by the government or adverse claimants) to doubt a person's [Blum's] right to the property seized," *United States v. Wright*, 610 F.2d 930, 939 & n. 39 (2d Cir.1979), and City Defendants continue to occupy the unenviable position of middlemen. Blum's contention that City Defendants' conduct is so offensive as to violate due process is unpersuasive on the record now before the Court.

## C. Abstention

■ Datacom has recently raised the argument that the Court should abstain from exercising jurisdiction over this case, under the doctrines of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Datacom argues that abstention is appropriate because this action involves fundamental local concerns—namely, municipal control over parking regulations—and because Blum is essentially challenging the enforcement of a New York judgment.

*Younger* abstention requires a court to determine "(1) whether there is an ongoing state proceeding; (2) whether there is an important state interest involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his

constitutional claims." *Christ the King Regional High School v. Culvert,* 815 F.2d 219, 223–24 (2d Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987); *see also Ohio Civil Rights Commission v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). Datacom does not refer to any state proceeding which may be considered ongoing for *Younger* purposes, and this doctrine therefore does not provide a basis for abstention.

*Pullman* abstention is appropriate "when difficult and unsettled questions of state law must be resolved before a substantial federal question can be decided," *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), and because a subsequent, authoritative resolution of the state law issue by a state court could render the federal opinion moot. *See Pullman,* 312 U.S. at 500, 61 S.Ct. at 645. In *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), involving the Wisconsin "posting" statute, the Supreme Court discussed the scope of the *Pullman* doctrine. The Court held that with respect to the Wisconsin law,

> the naked question, uncomplicated by an unresolved state law, is whether that Act on its face is unconstitutional.... [A]bstention should not be ordered merely to await an attempt to vindicate the claim in a state court. Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim.

400 U.S. at 439, 91 S.Ct. at 511; *see also Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 602 (2d Cir.1988) (if state law not uncertain or "susceptible of a limiting construction," court may not abstain) (quoting *Zwickler v. Koota,* 389 U.S. 241, 251 n. 14, 88 S.Ct. 391, 397 n. 14, 19 L.Ed.2d 444 (1967)).

Datacom does not identify the area of state law that is unclear and should be resolved first by a state court. Defendants' notification procedures are not themselves "law," and even if they were, they are clear and do not involve any difficult state law questions that could affect resolution of the federal claim. Thus, *Pullman* abstention is also inappropriate. *Compare West v. Village of Morrisville,* 728 F.2d 130, 134 (2d Cir.1984) (abstention appropriate in case involving three state law questions "with authorities and argument running both ways").

### CONCLUSION

For the reasons discussed above, Blum's motion is denied. The parties are directed to attend a status conference on Friday, July 21, at 3:30 p.m.

SO ORDERED.