VILLAGE OF BROCKPORT, Respondent, v COUNTY OF MONROE PURE WATERS DIVISION et al., Appellants.

Fourth Department, July 10, 1980

APPEARANCES OF COUNSEL

*John D. Doyle, County Attorney (Sergeant W. Wise* and *William D. Sheldon, III,* of counsel), for appellants.

*Aloi & Lunn (Frank A. Aloi* and *Samuel F. Prato* of counsel), for respondent.

### OPINION OF THE COURT

CARDAMONE, J. P.

The issues raised on this appeal are whether public bodies may agree to use arbitration as a forum to resolve a dispute between them and, if so, what tests should a court apply to determine whether such an agreement exists. This case has been before us on a previous occasion (58 AD2d 216) and its background may be briefly stated.

For 18 years from 1955 through 1972 respondent, Village of Brockport, constructed, operated and maintained a waste water and sewage treatment plant located at East Avenue in Brockport, New York. The plant was expanded and improved in 1967 at a cost of over $900,000. Upon notification to the village, appellant, Monroe Pure Waters Division, Northwest Quadrant Pure Waters District (District), assumed control of the plant and operated it through July, 1973 when its operation was discontinued and the inflow of sewage and waste to the plant was then diverted to the Regional Northwest Quan-

drant treatment plant. Negotiations between the District and the village with regard to the question of compensating the village for its equity in its discontinued plant ensued. When these proved unsuccessful the village sued the District and the other two appellants, County of Monroe (County) and the New York State Environmental Facilities Corporation, alleging that the forced discontinuance of the plant constituted a taking of village property "for which just compensation is required to be paid" under both Federal and State Constitutions. This court granted appellants' motion to dismiss the complaint, holding that compensation was not required by virtue of section 3 of the General Municipal Law, regardless of whether a taking had occurred *(Village of Brockport v County of Monroe Pure Waters Div.,* 58 AD2d 216). Section 3 of the General Municipal Law provides that a municipal corporation is entitled to compensation for its property which is taken in the exercise of the power of eminent domain for a purpose substantially different from that for which it is held. We reasoned that since the identical service or use taken was replaced by the District, the taking of the village's plant was *not* "for a purpose substantially different from that for which it was held" *(Village of Brockport v County of Monroe Pure Waters Div., supra,* at p 219). The Court of Appeals affirmed (43 NY2d 979).

On April 26, 1977 prior to this decision, the county legislature passed Resolution No. 136 of 1977, which abolished a previously organized committee for evaluation of compensation to local governments for phased-out sewage treatment plants. Resolution No. 136 of 1977, which is at the crux of this case, provided: "The following procedure is hereby established to determine compensation, if any, to be paid to local governments with respect to phased-out treatment plants in Monroe County sewer districts: Questions of evaluation of compensation, if any, for phased-out treatment plants shall by agreement between the respective county sewer district and the owners of such plants be submitted to a three member arbitration panel under the rules of the American Arbitration Association, one member to be appointed by the district, one member to be appointed by the owner of the plant and the third member to be selected by the other two members. The fees and expenses of the arbitration panel are to be shared equally by the parties. In each such submission the arbitration panel's award shall be final and binding upon the affected

county sewer distrcit provided the treatment plant owner agrees likewise to be so bound".

Subsequent to the decision of the Court of Appeals, the village renewed its effort to receive compensation for its now defunct East Avenue sewage treatment plant. On February 5, 1979 the village served appellants with a demand for arbitration pursuant to Resolution No. 136. When appellants sought a stay of arbitration by order to show cause, the village cross-moved to compel arbitration. Special term granted the village's cross motion. This appeal followed.

Appellants contend that there was no agreement between the parties to arbitrate the issue of compensation and that, therefore, the order directing arbitration was improperly granted. The village argues, first, that there was an agreement to arbitrate evidenced by county Resolution No. 136 of 1977 and by the village's subsequent demand for arbitration. The village next argues, in the alternative, that an appraisal agreement exists between the parties which is enforceable under CPLR 7601. Finally the village urges that the Supreme Court had inherent power to order arbitration in order to prevent overreaching by one municipal corporation over another.

■ Whether municipal corporations may use the arbitration forum to resolve their disputes is the first issue and one quickly resolved. Municipal corporations plainly have the power to enter into arbitration agreements (*Matter of Dormitory Auth. of State of N. Y. [Span Elec. Corp.]*, 18 NY2d 114, 122-123). County sewer districts, although not classified as municipal corporations (*Tom Sawyer Motor Inns v Chemung County Sewer Dist. No. 1*, 33 AD2d 720; cf. *Belinson v Sewer Dist. No. 16 of Town of Amherst*, 65 AD2d 912) are statutorily empowered to enter into contracts, subject to the approval of the county legislative body (County Law, § 265, subd b). Inasmuch as the power to contract necessarily includes the power to agree to arbitrate disputes (*Matter of Dormitory Auth. of State of N. Y. [Span Elec. Corp]*, *supra*, at p 118), the District in this case could have agreed to submit the compensation issue to arbitration. It did not choose to do so. However, the county possesses the requisite statutory power to enter into an agreement which would require the District to submit to arbitration. A sewer district is not an independent public corporate entity. It exists as a department or administrative unit of county government (*Tom Sawyer Motor Inns v Che-*

mung County Sewer Dist. No. 1, supra; cf. Belinson v Sewer Dist. No. 16 of Town of Amherst, supra). Since the District's powers are merely administrative in nature and subject to the control of the county board of legislators (County Law, §§ 263-268), it is the county which has the authority to make the rules and regulations under which the District conducts its operations (County Law, § 264). Thus, were the county to enter into an agreement requiring the District to submit to arbitration, or were the county to approve such a contract entered into by the District pursuant to County Law (§ 265), such contract would be enforceable by the village.

In determining whether arbitration between two public corporations should be directed, it is necessary to select the appropriate rule to apply in deciding whether there is an agreement to arbitrate.

The general rule, applicable in the context of commercial transactions, is that an agreement to arbitrate must be express and unequivocal (Matter of Marlene Inds. Corp. [Carnac Textiles], 45 NY2d 327, 333). Since the intent must be clear to render arbitration the exclusive remedy, the parties may not be led into it "unwittingly through sublety" (Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.), 306 NY 288, 291). In the field of labor relations in the private sector where the thrust of Federal policy is to promote stabilization of labor relations through the use of a collective bargaining agreement, there is a different rule. In this area the contract is considered "a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate" (Steelworkers v Warrior & Gulf Co., 363 US 574, 578). Matters arising under these agreements are presumed arbitrable, even absent specific reference in the agreement, unless it may be definitely determined that they are excluded from arbitration (Matter of Howard & Co. v Daley, 27 NY2d 285, 291). Doubts are resolved in favor of arbitrability (Steelworkers v Warrior & Gulf Co., supra, at p 583). There is yet a third rule applicable in the field of labor relations in the public sector. In examining arbitration clauses contained in collective bargaining agreements authorized by the Taylor Law (Civil Service Law, art 14) a two-tiered analysis is required. Initially, it must be determined whether arbitration of the particular claim is permissible under the terms of the Taylor Law. If so, the inquiry is directed at whether the parties, by their contractually chosen language, have agreed to submit the particular

dispute to arbitration. The rule here is that absent a clear, unequivocal agreement to that effect, no intent to arbitrate may be implied (*Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509, 512-514). Doubts are resolved against arbitrability.

■ The instant situation, involving two public bodies, falls within neither of the three foregoing categories. None of the considerations which are present in public or private sector collective bargaining agreements are present here. As a result, we believe that the general rule should apply. Simply stated, arbitration as a contractually selected remedy cannot be ordered absent an express, direct and unequivocal agreement in writing between the parties (CPLR 7501; *Schubtex, Inc. v Allen Snyder, Inc.*, 49 NY2d 1; Siegel, New York Practice, §§ 586, 588, p 835).

Having established the rule to be applied we turn now to the question of whether there is an agreement to arbitrate. Upon this record we can find no contract of any sort existing between the District or county and the village. The record contains numerous proposed contracts, each of which includes a provision for payment of so-called equity compensation to the village. However, none of these proposed contracts were ever executed. It does appear that on July 3, 1974 the Committee for Evaluation of Compensation recommended to the county legislature payment of $146,358.70 to the village. The District had recommended this figure to the committee, while the village had recommended payment in the amount of $272,943.49. We observe parenthetically that approximately $650,000 of the $900,000 cost was funded by the State and Federal Governments. It was the parties' inability to agree which led to the previous litigation in which the village unsuccessfully sought "just compensation" pursuant to the State and Federal Constitutions.

■ Since we find no actual contract between the parties, the agreement to arbitrate exists, if at all, by virtue of Resolution No. 136 of 1977. The question is whether that resolution amounted to an offer to arbitrate which ripened into an agreement upon the village's demand for arbitration. We think not. The language of the resolution supports the conclusion that the resolution does no more than authorize the District to agree to arbitrate. It specifically provided that submission to arbitration shall be "by agreement between the respective county sewer district and the owners of such

plants". Further, neither the District nor the village acted upon the authorization by entering into a written arbitration agreement. The District never agreed to arbitrate; and, the demand for arbitration sent by the village attorneys is ineffective absent authorization for such action by the village board. The record also suggests that the village officials themselves regarded the resolution as merely authorizing an agreement. Although, as noted, the county could have entered into an agreement requiring the District to arbitrate, it chose not to do so, but merely authorized the District to do so in its own behalf. Absent implementation by the District there is no agreement to arbitrate. Finally, doubts are resolved against arbitrability under the general rule we believe applicable, so that even were the language of Resolution No. 136 not free from doubt, arbitration as a forum may not be compelled, absent a clear, express and unequivocal agreement in writing to that effect.

■ The village's other contentions must be rejected. Its claim under CPLR 7601 is without merit. That statute, as its title states, also requires the existence of an agreement. It further urges that Supreme Court exercise equity jurisdiction to prevent overreaching by appellants against it. Yet it has already been judicially determined that it has no *constitutional claim* to compensation. Any right or remedy which the village has must rest upon some agreement between it and the county and/or the District which this court is powerless to fashion or create.

Accordingly, the order should be reversed and appellants' motion to stay arbitration should be granted.

SIMONS, SCHNEPP, DOERR and MOULE, JJ., concur.

Order unanimously reversed, without costs, and motion to stay arbitration granted.