James K. LEE

v.

Michael EDWARDS.

Civ. No. 3:91–CV–486 (WWE).

United States District Court,
D. Connecticut.

Oct. 27, 1995.

John R. Williams, Katrena K. Engstrom, The Law Offices of John R. Williams, New Haven, CT, David B. Bachman, New Haven Legal Assistance, New Haven, CT, Norman A. Pattis, New Haven, CT, for plaintiff.

Cheryl E. Hricko, Corporation Counsel's Office, City of Waterbury, Waterbury, CT, for defendant.

*RULING ON DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, AND, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL OR REMITTITUR*

EGINTON, Senior District Judge.

Plaintiff, a corrections officer, brought this action against defendant, an officer with the

Waterbury, Connecticut Police Department pursuant to 42 U.S.C. § 1983, with ancillary state law claims. On June 21, 1995, a jury returned a verdict in favor of plaintiff on a state law claim of assault and battery, and on a federal claim of malicious prosecution. Defendant seeks judgment notwithstanding the verdict pursuant to Fed.R.Civ.P. 50 and, in the alternative, a new trial or remittitur pursuant to Fed.R.Civ.P. 59(a). For the following reasons, all motions will be denied.

## BACKGROUND

This suit stems from a car accident in Waterbury, Connecticut that ended in the arrest of plaintiff by defendant for Operating a Motor Vehicle while Under the Influence of Alcohol and Following too Closely, as well as Assault on a Police Officer and Resisting Arrest. Many of the facts regarding the incident are disputed.

The parties agree that on February 6, 1990 at approximately 2:00 a.m. the car plaintiff was driving hit a parked pick-up truck owned by Robert Sprano, a state campus police officer. Sprano immediately came out of his house and defendant, who had been a member of the police force for about eight months, arrived soon after. Sprano testified that he told defendant that plaintiff was drunk. Plaintiff admitted that he had had a few drinks and, at trial, did not contest the validity of the arrest.

Defendant began administering a series of tests designed to determine plaintiff's sobriety. Plaintiff testified that he successfully completed a few of the tests. Defendant testified that plaintiff did not complete a test that involved walking heel-to-toe, and instead began mocking the test by marching around and yelling "captain." Plaintiff testified that he was a little sarcastic because he was concerned about the ice on the road and said "Aye, Aye." Plaintiff also testified that, when he made a stupid mistake during a counting test and began laughing, defendant got "aggravated." Plaintiff believed that defendant thought plaintiff was mocking him and questioning his authority. Defendant testified that he administered an alphabet test to plaintiff, and not a counting test.

After defendant determined that plaintiff had failed the sobriety test, he told plaintiff that he was under arrest for driving while intoxicated. Plaintiff testified that defendant grabbed his left arm and began walking him towards the rear of the car. He testified that he asked that he be hand-cuffed in the front of his body. He explained that he made the request because he knows that it is uncomfortable for muscle-bound men like himself to be hand-cuffed in the back.

When they reached the car, defendant pushed plaintiff against the car. Plaintiff testified that he turned around to say "give me a break" and that defendant pulled out a short stick about a foot long with a leather strap. He heard defendant say "Mr. Sprano, did you see him swing at me?" but did not hear any response. Plaintiff testified that when he turned around, he did not come into physical contact with defendant but that defendant hit him with the stick. He testified that defendant hit him in and around the head area, and that he blacked out after one or two strikes.

Plaintiff testified that the next thing he remembered was sitting in the back of the police cruiser. He was first taken to the hospital where he was treated for his bleeding head, and then to the police department. Plaintiff was released the next morning. The prosecutor declined to prosecute the case.

Dennis McGuire, a passenger in plaintiff's car and a corrections officer, testified that plaintiff told defendant that he was a corrections officer before he was led to the car. He testified that as defendant put plaintiff against the car, plaintiff turned around, identified himself as a corrections officer and requested that he be hand-cuffed in the front instead of the back. McGuire testified that defendant asked Sprano whether he had seen plaintiff hit him and that Sprano answered "yes."

McGuire testified that defendant took out a stick and hit plaintiff on the head about eight or nine times, and that plaintiff appeared stunned and went down on one knee. Back-up arrived at that point and McGuire was taken to another cruiser. McGuire testified that during the entire episode, he was

standing about eight to ten feet away and had a clear view of both men. He did not see plaintiff hit defendant at any time.

Defendant agreed that after plaintiff was up against the car, he asked to be hand-cuffed in front because he was muscle-bound but that defendant told him it was against department policy. Defendant testified that plaintiff then told him that he was a corrections officer and that he was not going to be arrested. He testified that plaintiff turned around and punched defendant on his left side, and then grabbed defendant's jacket and ripped it all the way down the side. Defendant testified that as he tried to move away, plaintiff swung at his face.

Defendant testified that he took out his service baton but not with the intention of hitting plaintiff. He stated that he attempted to use the baton as a lever to get plaintiff to break his grip on the jacket. He testified that after trying a few techniques, he succeeded in taking plaintiff to the ground. They both fell with defendant on top and defendant hand-cuffed plaintiff. Defendant testified that he did not remember hitting plaintiff on the head and that if he did, it was unintentional. He later testified that it was possible he hit plaintiff.

Robert Sprano testified that after plaintiff and defendant got to the back of the car, he observed arms and bodies "flailing around." He testified that he was afraid that defendant would be overpowered or that McGuire would grab defendant's gun, and so ran into the house where he put on his shoulder holster under his bathrobe. When he returned, he saw that plaintiff and defendant were still flailing around. However, he testified that, as his focus was on McGuire whom he told to step back, he did not clearly see what plaintiff and defendant were doing.

Plaintiff sued defendant under section 1983 for application of unreasonable force and malicious prosecution, plus a state law claim of assault and battery. Plaintiff claimed that defendant used unreasonable force in arresting him and that he filed a police report falsely stating that plaintiff had assaulted him, a police officer. Plaintiff contended that defendant took these actions because plaintiff

mocked him while he attempted to administer the sobriety tests.

On the unreasonable force claim, the court charged the jury as follows:

A constitutional violation does not occur where the plaintiff was injured due to the negligence of the defendant. A police officer has the lawful authority to use such physical force as may be reasonably appropriate to accomplish his lawful purpose. Not every push and shove, even if it may later seem unnecessary, violates the Constitution. A police officer must make instant judgments, often while engaged in a physical struggle. The law does not punish an officer for mistakes in judgment in such circumstances. In determining whether a defendant has used unreasonable force in violation of the Constitution, you should consider objectively all the relevant facts you find to have been proven in this case, including the need, if any, for the application of any force, the relationship between the need and the amount of force, if any, that you find was actually used and the extent of the injury inflicted, if any.

On the assault and battery claim, the court charged the jury that it "would be sufficient if the assault was the result of negligence, that is to say, of a failure on defendant's part to use the care which a police officer of ordinary prudence would use under the circumstances present." In response to the jury's inquiry, the court later admonished the jury as follows:

Look very carefully at the definition of unreasonable force and look very carefully at the definition of assault and battery because there are some differences there. Whether the differences are significant or not, it's entirely up to you. All I can do is charge you on the law, and I have charged you that there cannot be a constitutional violation [f]or negligence. You cannot use unreasonable force negligent[ly]. You can do an assault negligently, you can do an assault and battery negligently.

The jury returned a verdict in favor of plaintiff on the assault and battery claim for which it awarded $1,000 in compensatory damages, and determined that punitive damages should be awarded. It also returned a

verdict in favor of plaintiff on the federal claim of malicious prosecution for which it awarded $1.00 in compensatory damages and $200,000 in punitive damages. Defendant was found not liable on the federal claim of unreasonable force.

Defendant now moves for judgment notwithstanding the verdict and, in the alternative, a new trial or remittitur on the grounds that the jury's findings were inconsistent and contrary to law, and that the amount of punitive damages awarded for the malicious prosecution verdict was excessive.

## JUDGMENT NOTWITHSTANDING THE VERDICT

Judgment notwithstanding the verdict should be granted where

(1) there is such a complete absence or evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [people] could not arrive at a verdict against him.

*Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688–89 (2d Cir.1983) (citations omitted).

However, a movant is not entitled to judgment notwithstanding the verdict on any ground that was not included in a prior motion for a directed verdict made at the close of all evidence. *Hilord Chem. Corp. v. Ricoh Elec. Inc.*, 875 F.2d 32, 37 (2d Cir.1989). This requirement "may not be waived as a mere technicality." *Cruz v. Local Union No. 3 of Int'l Broth.*, 34 F.3d 1148, 1155 (2d Cir.1994).

In this case, defendant did not move for a directed verdict or judgment as a matter of law either after completion of plaintiff's case or at the close of the evidence. Accordingly, this court may not entertain plaintiff's motion for judgment as a matter of law and it will be denied.

## NEW TRIAL

■ There is no similar requirement for a motion for a new trial. A trial court has the discretion to order a new trial "for any of the reasons for which new trials have hereto-fore been granted in actions at law in the courts of the United States...." Fed. R.Civ.P. 59(a). Defendant must demonstrate that the jury reached "a seriously erroneous result" or that the verdict is "a miscarriage of justice." *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978). He must show that the verdict was against the weight of the evidence, that the trial was not fair or that the damages awarded were excessive. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). The trial judge may not grant a new trial solely because he may disagree with the jury's verdict. *Mallis*, 717 F.2d at 691.

### Assault and Battery

■ Defendant argues that the assault and battery verdict is inconsistent with the jury's finding of no liability on the constitutional claim of unreasonable force. He contends that the jury must have found that the assault was more than merely negligent, in light of the fact that it indicated that punitive damages should be awarded for the assault and battery even though it was instructed that such damages could only be awarded for malicious or reckless conduct.

Plaintiff argues that the sequence of events supports the verdict. He contends that the jury could have found that defendant's initial contact with plaintiff was unlawful, that plaintiff over-reacted and that defendant's use of force thereafter was reasonable. As a negligent act may constitute the basis for a finding of assault and battery but not for unreasonable force, the jury must have concluded that defendant acted negligently. Plaintiff waives any punitive damages on the assault and battery claim.

■ The court concludes that the two verdicts may be read as consistent with each other. A claim of unreasonable force in effecting an arrest brought pursuant to section 1983 is determined under Fourth Amendment reasonableness standards. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The Fourth Amendment is not violated unless "there is a governmental termination of freedom of movement *through means intentionally ap-*

*plied."* *Brower v. Inyo County,* 489 U.S. 593, 597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989) (emphasis in original). Accordingly, the Fourth Amendment cannot be violated through the negligence of the arresting officer. *Ansley v. Heinrich,* 925 F.2d 1339, 1344 (11th Cir.1991); *Loria v. Town of Irondequoit,* 775 F.Supp. 599, 603 (W.D.N.Y.1990). However, an actionable assault and battery claim under Connecticut law may be committed intentionally, wantonly or negligently. *Alteiri v. Colasso,* 168 Conn. 329, 333, 362 A.2d 798 (1975).

The arguments of plaintiff and defendant come down to a question of whether the jury found that defendant was negligent and mistakenly awarded punitive damages, or whether the jury found he acted intentionally but mistakenly did not find him liable for the constitutional claim of unreasonable force. There is sufficient evidence to support the conclusion that the jury found defendant acted negligently, rendering him liable only for assault and battery, and mistakenly awarded punitive damages. In response to the jury's inquiry, the court stressed that one difference between the two charges is that assault and battery can be committed negligently while Fourth Amendment unreasonable force can not. However, as plaintiff has waived any claim to punitive damages on the assault and battery claim, none will be awarded.

### Malicious Prosecution

■ Defendant also argues that the verdict on the malicious prosecution claim goes against the weight of the evidence. He contends that there was no evidence that he acted with malice or that he did not have probable cause for initiating the prosecution.

Although the malicious prosecution claim was brought under section 1983, the elements are borrowed from state law. *Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994). To prove an action for malicious prosecution under Connecticut law, the jury had to be convinced that (1) defendant initiated or procured the institution of criminal proceedings against plaintiff and that the proceedings were terminated in plaintiff's favor; (2) defendant acted without probable cause; and (3) defendant acted with malice. *Zenik v.*

*O'Brien,* 137 Conn. 592, 595, 79 A.2d 769 (1951).

The court finds that there was sufficient evidence for the jury to find that defendant acted with malice and that he had no probable cause to file a police report stating that plaintiff assaulted a police officer and resisted arrest. The jury was presented with two competing scenarios. It therefore had to make credibility assessments of the witnesses, all of whom were law enforcement officers, and decide whom to believe.

Plaintiff and McGuire testified that when defendant had plaintiff against the car, plaintiff turned around, asked for a break and asked that he be hand-cuffed in front. They deny that plaintiff touched defendant, even accidently. Plaintiff testified that he believed defendant was angry because defendant thought plaintiff was mocking him and questioning his authority.

Defendant, on the other hand, filed a report that stated plaintiff had assaulted him. He testified that plaintiff turned around, punched him on the left side and ripped his jacket. He testified that it was possible he struck plaintiff with the stick but that if he did, he did not mean to. He also testified that plaintiff mocked the sobriety tests. Accordingly, if the jury believed plaintiff, which it obviously did, defendant filed a report charging plaintiff with assault on a police officer and resisting arrest when he knew that both allegations were false and that he did so because he was angry at plaintiff for questioning his authority.

### Excessive damages

■ Courts are loath to tamper with jury calculations of damage awards. An award of compensatory or punitive damages should only be reversed or interfered with when it is "so high as to shock the judicial conscience and constitute a denial of justice." *Zarcone v. Perry,* 572 F.2d 52, 56–7 (2d Cir.1978). When making such a determination, it is proper to make reference to other awards in similar cases. *Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir.1990) (citations omitted).

A punitive award "may be an integral part of the remedy in a civil rights action." *Zar-*

*cone,* 572 F.2d at 54. The purpose of punitive awards is to deter defendants as well as others like them from similar conduct in the future. *Smith v. Wade,* 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983). This is especially true where police officers are involved. The Supreme Court has stated that the "focus is on the character of the [defendant's] conduct—whether it is the sort that calls for deterrence and punishment over and above that provided by compensatory awards." In a tort that requires a "particular antisocial state of mind" such as malicious prosecution, the "improper motive" of the defendant is a reason to award punitive damages. *Id.* at 53–4 (quoting *Restatement (Second) of Torts* § 908 cmt. c (1979)).

Defendant argues that the punitive damage award of $200,000 for the malicious prosecution claim is so large that it shocks the conscience. He contends that while the jury intended to punish defendant, the amount of the award reflects emotion, passion or prejudice and not reason. However, he does not point to any evidence that supports these contentions.

The punitive damage award neither shocks this court's conscience nor is outside the maximum limit of a reasonable range. While the incident could be perceived by others as relatively minor, the jury obviously felt that defendant's "abuse of official power here was intolerable" and wished to deal with it severely. *Zarcone,* 572 F.2d at 57. The accounts of plaintiff and defendant left little or no room for innocent misrecollection. Any misrepresentation had to be intentional. It is possible that this element of intention—of a police officer *intentionally* submitting a false report that could lead to conviction of a serious felony—is what the jury sought to punish.

Furthermore, substantial punitive awards in police misconduct cases are not rare. In 1988, the Second Circuit upheld a punitive award of $185,000 in a case involving a beating in the hands of police officers. *O'Neill v. Krzeminski,* 839 F.2d 9, 13–4 (2d Cir.1988). In 1990, the court found that a punitive award of $150,000 was within reasonable range in a case involving a plaintiff who was physically hurt by police officers and prosecuted for a parking violation. *Ismail,* 899 F.2d at 187. In 1987, an award of $200,000 was upheld for false imprisonment, false arrest and battery based on racial discrimination. *Hall v. Ochs,* 817 F.2d 920, 927–28 (1st Cir.1987).

*Remittitur*

Remittitur "is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Shu–Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 49 (2d Cir.1984). As the court has determined that the verdict was not excessive, it need not address plaintiff's motion for remittitur.

*CONCLUSION*

For the foregoing reasons, defendant's motion for judgment notwithstanding the verdict and, in the alternative, motion for a new trial or remittitur [45] is denied.